# THE PHIL. & READ. R. CO. v. J. A. HUGHES.

ERROR TO THE COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY.

Argued February 13, 1888—Decided March 19, 1888.

1. In an action by a railroad employee against the company for damages for personal injuries received while in the performance of his duty, the mere fact of the injury does not raise a presumption of negligence, as is the rule in the case of a passenger; the burden of proving negligence rests upon the plaintiff.
2. The duty of a railroad company to exercise ordinary care in providing and maintaining cars that are safe, and suitable appliances and machin-

Statement of Facts.

ery to be operated by their employees, does not require the adoption of the best machinery which can be procured or that which combines the latest devices or improvements, but such only as is reasonably safe and in common use.

3. If a person specially undertake to perform a peculiarly perilous employment by operating, knowingly and voluntarily, a machine obviously wanting in appliances suitable for safety, he cannot thereafter be heard to charge that the machinery was of a dangerous kind and wanting in such appliances.

4. So, if an employee, having had full opportunity to become acquainted with the hazards of his position, make no complaint to his employers as to machinery which he knows to be wanting in appliances for safety; or, having the means of discovering defects which his employers may not have, do not observe and report defects in the machinery which have become apparent in their use, he cannot complain if subsequently injured by such exposure.

5. A brakeman and a car-inspector of a railroad company are fellow-servants in the same circle of employment; and, if the company employ competent and skilful inspectors and afford them reasonable opportunities and facilities for the work under proper instructions, the company will not be liable for the negligence of the inspectors, unless it knew or by the exercise of ordinary diligence ought to have known, of the defective manner in which the inspection was made.

6. Where, in an action to recover for injuries incurred by a brakeman in the use of a broken brake, the evidence did not disclose a cause of the break affecting the company with negligence, or that the defect was discoverable upon a reasonable and proper inspection which was neglected, the plaintiff, failing to trace the injury to any negligence of the company, was not entitled to recover.

Before GORDON, C. J., PAXSON, STERRETT, CLARK and WILLIAMS, JJ.; TRUNKEY and GREEN, JJ., absent.

No. 390 January Term 1886, Sup. Ct.; court below, No. 182 December Term 1872, C. P.

On September 28, 1872, Jeremiah A. Hughes brought an action in case against the Philadelphia and Reading Railroad Company, to recover damages for personal injuries received. The declaration, filed on June 8, 1885, averred that on September 29, 1871, the plaintiff was a brakeman in the employ of the defendant company operating the Mine Hill Branch railroad; that while engaged in the discharge of his duty upon a coal train of defendant company, " by reason of a bad or defective brake, which became either broken or detached by the removal or breaking of a lever pin whereby the same became disjointed

underneath the car," the plaintiff was thrown from the car upon the roadbed, caught beneath the wheels of the moving cars, and received such injuries as to require the amputation of his left leg and four of the toes of his right foot. The plea was not guilty, filed August 12, 1885.

At the trial on February 1, 1886, the facts, more fully noted and discussed in the opinion of this court, appeared to be in substance as follows:

On the night of September 29, 1871, the plaintiff, who for three years had been employed as a brakeman on the Mine Hill Branch road, was upon a loaded coal train consisting of 70 or 80 cars, descending a light grade near Cressona. The night was dark and misty. The train was approaching a signal station and it became necessary to get it under control. Two kinds of brakes were in use on this road and on this train, illustrated on the trial by models No. 1 and No. 2. Both kinds were operated by levers attached to the side of the car: No. 1 without any guard inclosing the lever bar, No. 2 with such an inclosing guard. No. 1 was the style first in use upon the road; while No. 2 was being gradually introduced, as a form of lever brake safer by reason of the fact that, if the lever became disconnected from the brake underneath, it would not drop to the ground with the brakeman on it. On the occasion of the injury, the form of brake on the car from which the plaintiff was thrown was that of model No. 1, and as the plaintiff stepped upon the lever, with his hands upon the rail of the car, the usual way of checking the motion of the train, the lever in some way, whether by the breaking or the dropping of a connecting pin was not known or shown, became disconnected from the brake, the lever-bar dropped and the plaintiff was thrown to the ground, falling partly under the car the wheels of which passed over his left leg and right foot. The cars were all full of coal.

The cars of the defendant company were inspected regularly, but it was claimed on the part of the plaintiff that the inspection was superficial and inefficient.

The court, BECHTEL, J., in his charge to the jury fully and clearly reviewed all the testimony and proceeded:

A servant by entering into his master's service assumes all

the risks of that service which the master cannot control, including those arising from negligence of his fellow-servants. In case of an injury to one servant by the negligence of another, it is immaterial whether he who causes and he who sustains the injury are or are not engaged in the same or similar labor, or in positions of equal grade or authority. If they are acting together under one master in carrying out a common object, they are fellow-servants. The master, indeed, is bound to use ordinary care in providing suitable structures, engines, tools and apparatus, and in selecting proper servants, and is liable to other servants in the same employment if they are injured by his own neglect of duty. But it makes no difference whether the master is an individual or a corporation; in either case he is responsible to his servants for his own negligence, but not for that of their fellow-servants.

An employer is not bound to indemnify the employee for losses suffered by the latter in consequence of the ordinary risks of the business in which he is employed, nor in consequence of the negligence of another person employed by the same employer in the same general business, unless he has neglected to use ordinary care in the selection of the culpable employee.

It has been long and well settled by our decisions, that a servant assumes all the ordinary risks of his employment. He cannot hold the master responsible for an injury which cannot be traced directly to his negligence. If it has resulted from the negligence of a fellow-servant in the same employment, he must look to him, and not to the master, for redress. The master does not warrant him against such negligence.

The duty which the master owes to his servants is to provide them with reasonably safe tools and machinery, where that is necessary. When he does this, he does not, however, engage that they will always continue in the same condition. Any defect which may become apparent in their use, it is the duty of the servant to observe and report to his employer. The servant has the means of discovering any such defect which the master does not possess. It is not negligence in the master, if the tool or machine break, whether from an internal, original fault, not apparent when the tool or machine was at first provided, or from an external, apparent one, produced by time

and use, not brought to the master's knowledge. These are the ordinary risks of the employment which the servant takes upon himself. The master does not warrant his servant's safety; the servant will be deemed to have assumed all risks naturally and reasonably incident to his employment. The master, however, is under an implied contract to exercise reasonable care to adopt and maintain suitable instruments and means to carry on the business in which his servants are employed, and to select proper servants or co-employees.

Having thus explained to you the relations of master and servant, employee and co-employee, we now say to you that, if after a careful and impartial examination of all the testimony, and our instructions as to the law, you come to the conclusion that the defendant performed its duty in providing the plaintiff, its servant, with safe tools and machinery, of such character as was necessary to enable him to perform his duty, or that the plaintiff's injuries were occasioned by the carelessness or negligence of competent co-employees engaged in the same general business, or that his own negligence contributed to his injuries, then, in either such case or findings, it would be your duty to render a verdict in favor of the defendant.

Upon the other hand, if, after such careful and impartial examination, you find that the plaintiff's injuries were not contributed to by his own negligence, and were not occasioned by the carelessness or negligence of his co-employee, engaged in the same general business, but that the defendant was negligent in not providing him with reasonably safe tools and machinery, and that his injuries were directly and solely due to such negligence of the defendant, then the plaintiff would be entitled to your verdict. . . . .

The following are the points submitted by the defendant:

1. The burden of proving negligence is on the plaintiff.

Answer: We affirm this.

2. That the rule of law as to a passenger and an employee of a railroad company is different. In a suit by an employee against the company for injuries, or by his representatives, in case of loss of life, negligence cannot be inferred, but must be affirmatively proven by the plaintiff; and in the case of a passenger the presumptions are against the company, but the presumptions are against the employee, if he is hired by the

company, and in his regular employment at the time of the accident or injury.

Answer: We affirm this.

4. That where the same railroad company hire the men to inspect the cars, and hire men to move trains, as brakemen and others, then the inspectors and brakemen are fellow-servants, and if one be injured or killed through the fault or negligence of the other, there can be no recovery against the company, unless the master has employed unfit fellow-servants, or has retained them in his employ after knowing them to be unfit, or after he should have known them to be unfit.

Answer: To constitute one employee a co-employee or fellow-servant with another it is not necessary that they should both at the time be engaged in the same particular work. It is sufficient if they are in the employment of the same master, engaged in the same common work, and performing duties and services for the same general purpose. As it was a part of the duties of the car inspectors to inspect the cars upon which the plaintiff engaged to act as brakeman, we think they sustained the relation of fellow-servants to each other, and we, therefore, affirm this point.

5. That there is no evidence in the case to show that the iron in the pin in the brake was bad, or that it was bad when it was furnished to the railroad company. The law presumes that the railroad company defendant, has furnished suitable appliances and safe tools and machinery for its employees, and has employed competent inspectors to inspect their cars and appliances; and the burden is on the plaintiff, Hughes, to prove that the defendant did not furnish safe tools, machinery and appliances for its railroad, and did not employ competent men to inspect the cars, machinery and appliances.

Answer: We affirm this point, except that part which requests us to say that there is no evidence to show that the iron in the pin was bad; we leave you to ascertain what the evidence in this case shows and proves without any opinion from us, and from all the testimony before you.[1]

6. That there is no evidence in this case to show that the company knew of any defect in the pin, if there was any defect; and there is no evidence that the plaintiff in this case ever notified the railroad company of any defect in the pin, or that

he ever made any request to be provided with different or other appliances; nor did he make complaint that any of his fellow-servants were incompetent. It should, therefore, be held that the plaintiff, by entering the service of the defendant, and continuing in it for a considerable time prior to the accident, assumed the risks of negligence of his fellow-servants and the risks incident to the kind of appliances furnished him for the performance of his duties, and the plaintiff cannot recover.

Answer: No witness testified that the defendant company knew of any defect in the pin, and there is no evidence that the plaintiff ever notified the railroad company of any defect of any kind, or requested that he be furnished with any other or different appliances, or made complaint of any incompetency in any of his fellow-servants. In entering the employment of the defendant, the plaintiff assumed all risks naturally and reasonably incident to his employment, and cannot recover for any injuries received by reason of the negligence of any competent fellow-servant.

7. An employee who undertakes the performance of hazardous duties assumes such risks as are incident to their discharge; and if he thinks proper to accept an employment on machinery and appliances, defective from their construction, or from the want of proper repair, and, with knowledge of the fact, continues in the service, the master cannot be held liable for injury to the servant, within the scope of the danger which both of the contracting parties contemplated as incidental to the employment.

Answer: We affirm this.

9. That there is no evidence in this case to show whether, if there was a defect in the pin, it was a latent or a patent defect, and it is, therefore, impossible for the jury to determine the responsibility of the company for the injury to Hughes. If there was a defect in the pin, it may be that it was such a defect as could have been seen by Hughes, the plaintiff, as well as by the defendant; and unless the plaintiff had then informed himself of its condition, he could not recover, unless it be shown that the defendant did actually know of the defect, and that the plaintiff did not. If it was a latent defect, one that could not be seen by examination by the eye, then, unless the plaintiff has shown that the defendant was negligent

Charge of Court below.

in the furnishing of appliances on the railroad, the plaintiff cannot recover; and, inasmuch as there is no sufficient evidence to show whether the pin broke or fell out, and the pin not being produced, it is impossible to determine from the evidence whether the defect, if there was one, was a latent or a patent one, and the verdict should be for the railroad company.

Answer: What the testimony in this case proves, we leave you to ascertain from all the evidence before you. Where the defect from which the accident arises was known, or might, by the exercise of reasonable diligence, have been known to the servant, and he fails to make known the same to his master, or where machinery breaks from an internal, original fault, not apparent when the machine was at first provided, or from an external, apparent one, produced by time and use, not brought to the master's knowledge, the servant cannot recover.

10. If the jury believe that the pin in the brake was defective, the evidence being that the cars of the company are inspected daily, if the defect was one that could have been discovered by the inspectors and they did not, the defectiveness was because of the neglect of the inspectors; and these being fellow-servants with the plaintiff, and there being no evidence that the defendant did not exercise ordinary care in furnishing suitable material for the construction and repairs of cars, or in the selection of inspectors, the plaintiff cannot recover.

Answer: If you find that the brake pin was defective, and that the defect could have been discovered by the inspectors, but that they were careless and negligent in their inspection, although competent and fit to fill the position of inspectors, then the plaintiff cannot recover from the defendant for any injuries due to such negligence, as it would be the negligence of competent fellow-servants. What the evidence in the case shows, touching the matters mentioned in this point, you must ascertain.

11. There is no evidence in this case that the railroad company did not furnish suitable tools and appliances for the use of their employees, of whom Jeremiah A. Hughes, the plaintiff, was one, at the time of the accident, and the plaintiff cannot recover.

Answer: Refused.[2]

12. That under all the evidence in this case, Hughes, the plaintiff, cannot recover.

Answer: Refused.[3]

The jury returned a verdict in favor of the plaintiff for $2,500, and judgment was entered thereon. Thereupon the defendant company took this writ assigning for error:

1. The answer to defendant's fifth point.[1]

2. The answer to defendant's eleventh point.[2]

3. The answer to defendant's twelfth point.[3]

*Mr. J. F. Whalen* and *Mr. James Ellis* for the plaintiff in error:

1. There was no evidence in the case to show that the iron in the connecting pin was bad, or that it was bad when furnished to the company. The refusal of the court to so charge when requested by the defendant's fifth point, left it to the jury to say or to infer without evidence, that the iron in the pin was bad, notwithstanding the fact that the plaintiff himself would not testify that the pin broke, that there was positive evidence that the iron in the pin was good, and that the accident may have occurred because the pin in the brake dropped out.

2. The plaintiff, having been for three years in the same employment in which he was injured, knew the dangerous character of the service and by continuing in it, must be held to have assumed the risks: Green and Coates St. Pass. Ry. Co. v. Bresmer, 97 Pa. 103; Whart. on Neg., 2d ed., § 206, et seq.; 3 Wood, Ry. Law, 1452, 1461, 1464, 1465, 1466, 1483, 1508; Mich. Cent. R. Co. v. Smithson, 1 Am. & E. R. C. 101; Smith v. Potter, 2 Idem 140; Mansfield Coal Co. v. McEnery, 91 Pa. 195; Campbell v. Penn. R. Co., 17 W. N. 73; Rummell v. Dilworth, 111 Pa. 343; Brossman v. Lehigh V. R. Co., 113 Pa. 490; Ballou v. Railroad Co., 5 Am. & E. R. C. 480.

3. The servant is bound to see for himself such risks and hazards as are patent to observation; is bound to exercise his own skill and judgment in a measure, and cannot blindly rely on the skill and care of his master: Wood, M. & S., 682–791; Murphy v. Crossan, 98 Pa. 495; Baker v. Railroad Co., 95 Pa. 211; P. & C. R. Co. v. Sentmeyer, 92 Pa. 276; Sykes v. Packer, 99 Pa. 465; Wannamaker v. Burke, 111 Pa. 423.

4. A railroad company is not bound to adopt the latest improvements in machinery, nor is it liable for an accident which would not have occurred if such improvements had been adopted: 3 Wood, Ry. Law, § 378; Disher v. Railroad Co., 15 Am. & E. R. C. 233; Whart. on Neg., 2d. ed., § 213; Stack v. Patterson, 6 Phila. 225; P. & C. R. Co. v. Sentmeyer, 92 Pa. 276; Schall v. Cole, 107 Pa. 1; North. Cent. R. Co. v. Husson, 101 Pa. 1; Patterson's Ry. Acc. L., 343.

5. The car inspectors were competent men. They were fellow-servants of the plaintiff. Even if their inspection of the cars were made in a careless manner, the company was not liable therefor: Wood, M. & S., § 234, Ryan v. Railroad Co., 23 Pa. 384; Lehigh V. Coal Co. v. Jones, 86 Pa. 432; Whart. on Neg., §§ 210, 224; Frazier v. Penn. R. Co., 38 Pa. 104; Caldwell v. Brown, 53 Pa. 453; Weger v. Penn. R. Co., 55 Pa. 460; Ardesco Oil Co. v. Gilson, 63 Pa. 146; 3 Wood, Ry. Law, 1498; Keystone Bridge Co. v. Newberry, 96 Pa. 240; Tottens v. Penn. R. Co., 6 Am. & E. R. C. 616; Campbell v. Penn. R. Co., 17 W. N. 73.

6. It is not negligence in the master if the tool or machine break, whether from an internal, original fault, not apparent when the tool or machine was provided, or from an external, apparent one, produced by time and use, not brought to the master's knowledge: Wood, M. & S., 208; Whart. on Neg., 2d ed., 208–243; 3 Wood, Ry. Law, 1464; Baker v. Railroad Co., 95 Pa. 211.

7. It was the duty of the court to direct a verdict for the defendant for want of sufficient proof of negligence to warrant a verdict for the plaintiff: Weger v. Penn. R. Co., 55 Pa. 46; Howard Express Co. v. Wile, 64 Pa. 201; Hoag v. Railroad Co., 85 Pa. 293; Penn. R. Co. v. Fries, 87 Pa. 234; Mansfield Coal & Coke Co. v. McEnery, 91 Pa. 195; P. & R. R. Co. v. Schertle, 97 Pa. 450; Green etc. Pass. Ry. Co. v. Bresmer, 97 Pa. 97; Lehigh V. Coal Co. v. Jones, 86 Pa. 432; Keystone Bridge Co. v. Newberry, 96 Pa. 246; Sykes v. Packer, 99 Pa. 465; North. Cent. R. Co. v. Husson, 101 Pa. 1; P. & R. R. Co. v. Hummell, 44 Pa. 375.

*Mr. D. C. Henning* and *Mr. F. W. Bechtel,* for the defendant in error:

1. A master is under an implied contract with his employees, to adopt and maintain suitable instruments and means with which to carry on the business in which they are employed: Green etc. Pass. Ry. Co. v. Bresmer, 97 Pa. 106; Cayzer v. Taylor, 10 Gray 274; Gilman v. Railroad Co., 10 Allen 233; Leaver v. Railroad Co., 14 Gray 466; Coombs v. New Bedford Cordage Co., 102 Mass. 572; Penn. & N. Y. Canal & R. Co. v. Leslie, 109 Pa. 296; P. W. & B. R. Co. v. Keenan, 103 Pa. 124. In view of this hazardous employment, the testimony shows that the brake was unsafe, that a safer construction, in fact a safe construction, was then known and had a long time previously been adopted by the company. Was not this evidence of negligence? If the original construction did not show negligence, was there not evidence of negligence in maintaining it? P. & R. R. Co. v. Agnew, 11 W. N. 394.

2. Incident to these obligations, is the duty of proper inspections. The evidence was that between Schuylkill Haven and Gordon Plane there were but two inspectors, those at Cressona, who were often required to inspect as many as 2000 cars in one day. We contend that there was negligence in not making suitable inspection of this car, and in not furnishing a sufficient number of inspectors to discover and repair defects of the kind in this case: P. & C. R. Co. v. Sentmeyer, 92 Pa. 280; Johnson v. Bruner, 61 Pa. 61; Tierney v. Railway Co., 24 Am. L. R., N. S., 669.

3. Was the inspector a fellow-servant with the brakeman? The manager of certain departments of a railway corporation stands in the place of his principal. The departments of the inspector and of the brakeman were entirely different and distinct. The inspector was a mechanic, with power to say what car might be placed in the train, and what car should be removed. How shall the brakeman know whether the inspector be competent and the inspection be proper? The precise question was decided by the Supreme Court of Minnesota in Tierney v. Railway Co., 24 Amer. L. R., N. S., 669, and the principle is found in our own cases: Penn. & N. Y. Canal & R. Co. v. Leslie, 109 Pa. 296; Tissue v. Railroad Co., 112 Pa. 91; and in Whart. on Neg., § 232.

OPINION, MR. JUSTICE CLARK:

The plaintiff, Jeremiah A. Hughes, was, at the time he received the injury complained of, on September 29, 1871, a brakeman in the employ of the Philadelphia & Reading Railroad Company, and in the performance of his duty as such employee. There was therefore, in the mere fact of the injury, no presumption of negligence on the part of the company, as in the case of a passenger; the burden of proving negligence rested upon the plaintiff.

It was the duty of the company to exercise ordinary care in adopting, providing and maintaining safe cars, with suitable appliances and machinery, with which the plaintiff might transact the business of the company within the line of his duty; not the very best machinery which could be procured, or that which combined the latest device or improvement, as a precaution against danger, but such as was reasonably safe, and in common use. It was the duty of the company also to use ordinary and reasonable care in the employment of his fellow-servants or employees, and to dismiss any of these whom they might know, or in the exercise of ordinary diligence should have known, to be careless, or unfit for the places assigned them. On the other hand, the plaintiff will be understood to have assumed not only all the risks incident to his employment, but also those arising from the negligence of his fellow employees in the same circle of employment. Moreover, as we said in Rummell v. Dilworth, 111 Pa. 343: "If a person specially undertake to perform a peculiarly perilous work, by operating a machine obviously wanting in suitable appliances for safety, knowingly and voluntarily, he cannot afterwards complain, in case of injury in consequence thereof, that the machinery was of a dangerous kind, and that it was wanting in appliances reasonably necessary to render it safe. So, upon an analogous principle, if an employee, after having a full and fair opportunity to become acquainted with the risk of his situation, makes no complaint whatever to his employer as to the machinery which he knows to be wanting in appliances for safety, takes no precaution to guard against danger, but, accepting the risks, voluntarily continues in the performance of his duties, he cannot complain if he is subsequently injured by such exposure."

Now, it is conceded that the brakes upon all the Mine Hill cars were of the kind which caused the injury; that the difference in their construction from others in use was open and obvious; that Hughes had been a brakeman on these cars for three years and upwards, and that if the operation of this brake was peculiarly perilous, he knew, or by reason of his long experience ought to have known, the fact. He admits that he made no complaint whatever, and that he continued in the company's service; the inference is irresistible, therefore, that he accepted the risks incident to this particular employment. He was not bound to risk his safety in the service of the company, and if he knew the brakes to be wanting in any appliance which would be a precaution against danger, it was his duty to decline to operate them. Having undertaken the performance of duties he knew to be hazardous, he assumed the risks incident to their discharge.

In this view of the case, the peculiar construction of the brakes was a matter of little importance; the main question of difficulty arises out of the fact that when Hughes stepped upon the brake, the iron pin, which passed through the fork at the lower end and formed the fulcrum of the lever which held the brake block in place, either broke or dropped out, and Hughes fell to the ground and under the wheels. This pin was ordinarily kept in place by a key, but as neither the pin nor the key was afterwards found, it is impossible to state from what cause the accident occurred, whether the pin was broken, or whether it fell out from some defect or displacement of the key.

There is some evidence that this car, No. 7, had been rebuilt shortly before the occurrence. The negligence of the company in the rebuilding of the car is not to be presumed. The presumption is that the pin was made of proper materials, and that presumption is greatly strengthened by the testimony of Daniel Grimm, the blacksmith, who says that it was made of good iron and was properly adjusted and secured when it left the shop. Upon a careful examination of the testimony, we fail to find the slightest proof that the iron in this pin was bad; and there was literally no evidence to justify the jury in coming to any such conclusion. We do not even know that the pin broke; it may have fallen out. The key may have

been removed; the evidence shows that they are sometimes taken out and imperfectly replaced. The jury would not have been justified in determining that the pin was of bad iron upon mere conjecture. We think the court should not have referred this question to the jury; the presumptions and the proof were all to the effect that the iron was good, and the jury should have been so instructed. We are of opinion that the defendants' fifth point should have been affirmed without qualification.

The second specification of error raises the question, whether or not there was any evidence that the company failed to furnish and maintain suitable tools and appliances for the use of the plaintiff. There was no evidence, as we have said, aside from the peculiar construction of the brake, that the car was imperfectly constructed. But the point which was refused involves also the question of proper inspection and repair.

It is undoubtedly the duty of railroad companies to exercise ordinary care in the maintenance of the machinery and tools which they put into the hands of their employees, and to institute proper reasonable regulations for the safety of their employees in this respect; but this rule of duty must be taken in a practicable and reasonable sense. The company does not insure the life of its employees; the servant assumes, as we have said, the ordinary risks of his employment, and if any defect in the tools or machinery placed in his hands becomes apparent in their use, it is the duty of the servant to observe and report to his employers, for the servant has means of discovering defects, which the master may not possess. If, however, the company employ competent and skilful persons for the purpose of inspection, and afford them reasonable opportunities and facilities for the work under proper instructions, the company will not ordinarily be liable for the negligent performance of the work by their employees, to a fellow employee, unless the company knew, or by ordinary diligence ought to have known, of the defective manner in which the inspection was conducted. We are clearly of opinion, too, that a brakeman and a car inspector are in the same circle of appointment; they co-operate in the same business, and the former knows that the employment of the latter is one of the incidents of their common service. But whilst the performance of the duty of inspection

must necessarily be committed in detail to the employees, the general regulation is in the hands of the company, and it is the duty of the company to provide suitable persons, in sufficient numbers, at proper places, with reasonable opportunities to accomplish the work.

The evidence would seem to show that there were three points for the inspection of these cars within twenty miles; at Schuylkill Haven, where the empty cars were inspected on their way to the mines, on the Gordon Plane, and at Cressona, where the loaded cars were inspected as they came from the mines; besides other alleged inspections to which the cars were subjected at the coal chutes, and by Daniel Grimm, who, it is said, had these cars in his special charge. The inspections at these points were not minute or critical; they were limited to a hurried examination of the most exposed and important points; the cars were subjected to a thorough examination only when turned into the shop for repairs. Whether this provision of the company in view of the heavy grades along the road, and the number of cars to be inspected, was a reasonably adequate one, would, if the question were material, be for the determination of the jury. It is absurd, however, to suppose that in these inspections the company was required to remove the bolts, screws, pins, or other appliances belonging to the machinery of a car, en route, in order to detect any possible imperfections. A railroad or other employer is not required to exercise that exquisite and exhaustive care in the constant examination and overhauling of its machinery and works, which would be incompatible with the proper furtherance of business: Whart. on Neg., 213.

But is there any evidence that the injury complained of was attributable to a negligent inspection? Was there any defect in this brake which any reasonable provision for inspection would have disclosed? Bearing in mind that the burden of proof rests upon the plaintiff, is there any evidence that the pin was defective? It was properly constructed; it was of the size used in all the brakes; the proof as well as the presumption is that the iron was good, or was believed to be good. It was properly secured by a key, and had been in use for several months. It is conceded that the brake was in proper condition on the grade above Minersville, and the accident occurred, as

we understand the case, only three or four miles distant from that place, whilst the next place of inspection was at Cressona, a short distance below. But, if the iron was bad, was the defect such as might have been detected upon any reasonable inspection? Was it such a defect even as could have been observed if the pin had actually been withdrawn and examined; or was the defect latent, such as could not have been observed? Did the pin break at all? If it did, was it the result of accident or negligence? If the pin did not break, says the plaintiff, it fell out from displacement of the key. Is there any evidence that the key had fallen out or been removed? Was the jury to guess at the real facts of the case and to determine these questions of fact upon mere conjecture? The plaintiff undertook to trace the injury to the negligence of the company, and until he can show some negligent act which was the proximate cause of his injury, he cannot recover. We know that when Hughes stepped on the brake with his whole weight it went down, and that he went with it. But whether the pin broke from any defect which a proper inspection would have disclosed, does not appear; that it broke at all is not shown; nor is there any evidence that the occurrence was owing to a dislocation of the key. It devolved upon the plaintiff to show negligence of the company, and that that negligence was the proximate cause of the injury. In this he has failed, and in the absence of proof on that point we cannot ascribe the accident to that cause.

The judgment is reversed.