## Dalton v. Towanda Borough, Appellant.

*Municipalities—Boroughs—Sewers—Natural water course—Waters—Explosion of gas—Notice—Negligence.*

A municipality may connect its sewers and drainage with any natural channel for the flow of water without incurring liability to keep that channel open to its mouth, and the right or liability is not changed though the state, or the owners of the lots through which it passes, have made an artificial and covered substitute in place of a natural channel.

The owners of property in a borough for their own convenience and at their own expense, built a stone culvert along and over a creek which was a natural waterway flowing through the borough. Subsequently the owners of a furniture factory laid an iron pipe from the factory to the culvert, and blew what was called sand dust through the pipe into the culvert. This dust was explosive in character, but this fact was not known to the borough authorities, nor was their permission asked or given to lay the pipe. Some years afterwards the borough council passed an ordinance providing for the construction of a public sewer along or near the creek. In pursuance of the ordinance a sewer pipe eight inches in diameter was laid for a short distance in the stone culvert. Some years after the pipe was laid, an employee of the borough went into the stone culvert with an open torch to look for leaks in the sewer, and while engaged in this work he was injured by an explosion of the sand dust. *Held,* that there was nothing to show negligence on the part of the borough, and that it was not liable for the injuries sustained by its employee.

Argued March 12, 1906.    Appeal, No. 284, Jan. T., 1905, by defendant, from judgment of C. P. Bradford Co., Sept. T., 1898, No. 468, on verdict for plaintiff in case of James Dalton v. Towanda Borough.    Before MITCHELL, C. J., FELL, MESTREZAT, POTTER and ELKIN, JJ.    Reversed.

Trespass to recover damages for personal injuries.    Before CAMERON, P. J., specially presiding.

The circumstances of the accident are set forth in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $2,000.    Defendant appealed.

*Error assigned* was in entering judgment for the plaintiff on the verdict.

*Rodney A. Mercur,* with him *W. E. Lane* and *William Maxwell,* for appellant.—The borough had the right to lay the sewer

pipe in the channel: Munn v. Pittsburg, 40 Pa. 364; Com. v. Yost, 11 Pa. Superior Ct. 323; Matlack v. Callahan, 25 Pa. Superior Ct. 454; Keating v. Pittston, 8 Kulp, 421; Wood v. McGrath, 150 Pa. 451; Flynn v. Shenandoah Boro., 19 Pa. C. C. Rep. 622; Norristown Woolen Co. v. Taubel, 28 Pa. C. C. Rep. 194; Tyler Tube & Pipe Co. v. Washington Boro., 48 Pitts. L. J. 363.

*1. McPherson* and *D. C. DeWitt*, for appellee.—Cash Creek was a borough sewer and the defendant was bound to look after it as such. The borough was certainly exercising dominion over it, and Morris, its street commissioner, was authorized to send the plaintiff through the culvert to do the work ordered: Blizzard v. Danville Borough, 175 Pa. 479; Owens v. Lancaster, 182 Pa. 257.

OPINION BY MR. JUSTICE ELKIN, May 24, 1906:

In order to sustain a recovery in this case the burden was on the plaintiff to affirmatively establish two things: First, that the defendant borough exercised control and dominion over Cash Creek culvert, and second, that it knew or ought to have known the dangerous and inflammable character of the sand dust accumulated therein and should have given notice thereof. No testimony was introduced to show that Cash Creek culvert belonged to the borough, or that any portion of it was built or maintained for municipal purposes. Cash Creek is a natural waterway flowing through the borough of Towanda, and emptying into the Susquehanna river. Many years ago, the exact date not appearing in the evidence, private property owners along said creek, at their own expense built a stone culvert along the line of the waterway and confined the flow of the water therein. This was done as a convenience to the property owners, and in no way changed its character as a natural waterway. The rights and privileges of the public and of the borough were in no way changed, modified or affected by the construction of the stone culvert. It was a natural waterway before the construction of the culvert, and it remained the same thereafter. In 1882 a company organized for the purpose of manufacturing furniture in order to get rid of dust accumulations, connected its factory by means of an iron pipe with the

culvert. This pipe laid on private property was constructed and maintained by the furniture company. The borough had nothing to do with it. What is called sand dust was blown through this pipe into the culvert. The borough not having any supervision or control of the culvert, was not consulted about the use made of it, did not give permission to so use it, and so far as the testimony discloses, never has been in a position to either grant or deny the furniture company the right to blow sand dust into it. It is conceded by all concerned that this was the status of the parties for a long period of years. It is contended, however, that the original situation was changed by reason of the borough making use of a portion of the culvert in which to lay a sewer pipe in 1897. The whole case in this respect depends upon the ordinance of January 12, 1897. It provides, inter alia, as follows : " that the borough accept the proposition of the petitioners and construct a public sewer along or near Cash Creek in said borough from the Susquehanna river to Third street, according to the plans and specifications of George V. Meyer, borough engineer, attached to said petition, and that the cost of the same when completed · be justly and equitably assessed upon said petitioners as prayed for in said petition." This ordinance was followed by the borough constructing a sewer from the Susquehanna river to Third street as prayed for. In the construction of this sewer an eight inch pipe was laid for a short distance in the stone culvert entering same in an alley on the Decker property, a considerable distance west of the place where the accident occurred. There is nothing in the evidence to show what rights, if any, the borough obtained in the use of the culvert. The accident did not occur in that portion of the culvert in which the sewer pipe was located. It occurred near the point where the dust pipe leading from the furniture factory entered the culvert, which was upwards of 100 feet east of the point where the sewer pipe entered. It is not contended that the borough either constructed or maintained the stone culvert at any point, or that it made use of it in any way except in laying its pipe in that portion of the culvert hereinbefore referred to west of the place of accident and entirely removed from it. Did the ordinance of 1897 appropriate to public use the culvert in question? We think not. The ordinance itself only provides for

the construction of " a public sewer along or near Cash Creek."
Certainly it cannot be said that an ordinance which provides
for the construction of a sewer along or near Cash Creek can
be construed to mean that it was intended to appropriate the
stone culvert to a public use.   The only use made of the cul-
vert was the location in part of it of an eight-inch sewer pipe,
and this at a point many feet distant from the place of accident.
This court has held that a municipality may connect its sewers
and drainage with any natural channel for the flow of water,
without incurring liability to keep that channel open to its
mouth, and the right or liability is not changed, though the
state or the owners of the lot through which it passes have
made an artificial and covered substitute in place of the natural
channel : Munn v. Pittsburg, 40 Pa. 364.

The rule of that case applies with convincing force to the
facts of the case at bar.   Before the stone culvert was built
the borough of Towanda had a right to drain into the stream,
and it necessarily follows that it had the right to lay its sewer
pipe for drainage purposes in the natural channel if it chose so
to do.   The fact that the private lot owners had made an ar-
tificial stone culvert to confine the flow of the water in no way
interfered with the right of the borough to make use of the
natural channel for drainage purposes.   Nor does the fact that
the borough used the stone culvert for the purpose of laying
the sewer pipe for a short distance change the situation.   We
must conclude, therefore, that there was no evidence offered in
the case to show that the defendant borough at any time dedi-
cated the stone culvert to public use, or maintained it or exer-
cised any supervision or control over it.   It therefore cannot
be made liable in damages for alleged negligence in permitting
the sand dust to be blown into it.

The other point is equally fatal to the appellee's case.   If
the testimony had shown that the borough of Towanda had ex-
ercised supervision and control over the culvert, it still would
not be liable in damages under the facts of this case.   This is
not a case for the application of the maxim res ipsa loquitur.
This maxim is limited to the cases of an absolute duty, or an ob-
ligation practically amounting to that of an insurer : Oil Com-
pany v. Penna. Torpedo Company, 190 Pa. 350 ; Stearns v. On-
tario Spinning Company, 184 Pa. 519.   In order to entitle the

plaintiff to recover it was necessary to show some specific act of negligence on the part of defendant, or the existence of conditions so obviously dangerous as to amount to evidence from which an inference of negligence could arise: Diver v. Singer Manufacturing Company, 205 Pa. 170; Spees v. Boggs, 198 Pa. 112; see also to the same effect P. & R. R. R. Co. v. Hughes, 119 Pa. 301; Pawling v. Hoskins, 132 Pa. 617; Mixter v. Imperial Coal Co., 152 Pa. 395. We have always held in such cases that the happening of the accident is not in itself enough to establish negligence. The primary duty resting upon the plaintiff in this, as in every other such case, is to affirmatively show the negligence complained of. How did the plaintiff meet this burden? He offered evidence to show that he went into the stone culvert with an open torch to look for leaks in the sewer and while engaged in this work an explosion occurred and an injury resulted. It is contended by the learned counsel for appellee that the sand dust was explosive and dangerous, and that it was the duty of the borough to give notice of its dangerous character to the plaintiff before he went into the culvert. The answer to this position is that there is no evidence in the case to show that the borough or any of its officials knew or ought to have known that sand dust was explosive or inflammable or dangerous. Indeed, to the ordinary mind it is difficult to understand how dust composed of small particles of wood and sand and nothing else, is explosive or dangerous. This branch of the case comes within the suggestion of our Brother BROWN in Kilbride v. Carbon Dioxide, etc., Company, 201 Pa. 552, wherein he said: "After almost every one (accident) theories are advanced as to how it could have been avoided; but a defendant's liability for negligence is not to be so determined. What would have been wise, simply in view of what is learned after an occurrence like this, is no criterion of care. Failure to do some particular thing which might have prevented an accident, and which is brought to the attention of the party charged with carelessness for the first time only after the accident has happened, is not the test of negligence."

In the case at bar, the borough did not know of the dangerous character of the sand dust, and there was nothing in the surroundings and the situation so far as shown by the testi-

mony to give notice of its dangerous or inflammable character, or to convict it of negligence in failing to notify plaintiff of conditions unknown to its own officials.

Judgment reversed, and it is ordered that judgment be entered for defendant in the court below non obstante veredicto.