# Sage *v.* Baltimore & Ohio Railroad Company, Appellant.

*Negligence—Railroads—Master and servant—Locomotive engineer— Locomotive cleaner—Fellow servant.*

A locomotive engineer is a fellow servant of a locomotive cleaner, and if the latter is injured by the iron door in front of the locomotive falling upon him, and the accident is due to the absence of pins or bolts from the hinges on which the door was intended to swing, he cannot recover from the railroad company for his injuries, if it appears that the engineer in charge of the locomotive had knowledge of the absence of the pins, and had failed to make a written report to the company of such fact, which he was required to do under the rules of the company, and which he had done on former occasions.

If a master employs competent and skillful persons for the purpose of inspection, and affords them reasonable opportunity and facilities for the work under proper instructions, the master will not ordinarily be liable for the negligent performance of the work by such persons, to a fellow employee, unless the master knows, or by ordinary diligence ought to have known of the defective manner in which the inspection was conducted.

When the employee's duty to inspect or repair the apparatus, is incidental to his duty to use the apparatus in the common employment, he is not intrusted with the master's duty to his fellow servant, and the master is not responsible to his fellow servant for his default.

Argued May 13, 1907.   Appeal, No. 66, Jan. T., 1907, by defendant, from judgment of C. P. Fayette Co., June T., 1905,
VOL. CCXIX—9

130 SAGE *v.* BALTIMORE & OHIO R. R. CO., Appellant.

No. 400, on verdict for plaintiff in case of Joseph Sage v. Baltimore & Ohio Railroad Company. Before FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ. Reversed.

Trespass to recover damages for personal injuries. Before REPPERT, P. J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $2,060. Defendant appealed.

*Error assigned* among others was in refusing binding instructions for defendant.

*James R. Cray*, with him *D. W. McDonald* and *T. H. Hudson*, for appellants.—In order that workmen would be fellow servants within the meaning of the rule that a master is not responsible to a servant for an injury caused by his fellow servant, it is not necessary that the workman causing and the workman sustaining the injury should both be engaged in the same particular work. It is sufficient if they are in the employment of the same master, engaged in the same common work, and performing duties and services for the same general purposes. And the rule is the same, although the one injured may be an inferior in grade and subject to the control and direction of the superior whose act caused the injury, providing they were both co-operating to effect the same common object: Lehigh Valley Coal Company v. Jones, 86 Pa. 432; N. Y., L. E. & W. R. R. Co. v. Bell, 112 Pa. 400; McGinley v. Levering, 152 Pa. 366; Keystone Bridge Company v. Newberry, 96 Pa. 246; Spancake v. P. & R. R. R. Co., 148 Pa. 184; Ross v. Walker, 139 Pa. 42.

*D. M. Hertzog*, for appellee.—The case was for the jury: Mensch v. Penna. R. R. Co., 150 Pa. 598; Delaney v. Penn Steel Casting & Machine Co., 30 Pa. Superior Ct. 387.

OPINION BY MR. JUSTICE STEWART, October 21, 1907:

The plaintiff, employed as a locomotive cleaner, received his injuries while attempting to open the iron door in the front of a locomotive, in order to get access to the smokestack which

he had been ordered to clean. The door was supplied with hinges, but when closed was fastened to the boiler of the engine by bolts and clamps. After the plaintiff had removed the last of these, the door, instead of swinging on its hinges, fell outward against him, forcing him from the bumper where he was standing into the ash pit beneath. The injury he thus sustained was due directly to the absence of pins or bolts from the hinges on which the door was intended to swing; had they been in place the door would not have fallen, but would have swung open. The absence of these pins or bolts from the hinges is the negligence charged. If we assume that there was negligence in the case, the question remains, whose was the fault? The evidence adduced by the plaintiff furnishes the only explanation we have of the absence of the pins, and that it is the correct one admits of no doubt. Shortly before the accident they were in place, and it is nowhere suggested that they were defective in construction or application, or that they were outworn. The principal witness for the plaintiff, the engineer who was uninterruptedly in charge of this particular engine up until the last run preceding the accident, testified that they were out most of the time, not because of failure on the part of defendant to supply them when required, or because of accident, but that they were removed from their place by those employed in running the engine for a purpose unknown, so far as the evidence discloses, to the defendant, and therefore unauthorized. When in place in the hinges, they prevented the door from fitting tight against the engine, thus allowing more or less draught through the door, and to this extent reducing the steaming capacity of the engine. To correct this, some of the persons employed about the engine would, when occasion seemed to them to require it, remove the pins and tighten the clamps. The evidence leaves it clear beyond question, that the absence of the pins on this particular occasion was due to such unwarranted interference.

Since the original displacement of the pins was a malfeasance on the part of someone for which the defendant could not be held responsible, it follows that if any liability attach to the defendant for the injury here, it can only be on the ground that it knew, or should have known, by the exercise of proper care, of the absence of the pins, and provided for their

replacement. Actual knowledge is not pretended. The accident occurred on the morning of February 27. The engineer who had been in charge of this particular engine made his last run with it two days before, completing his run on the morning of the 25th. He testified that when he then left the engine in the yard, the pins were not in place. Though a later run was made with the same engine, ending on the morning of the 27th, by another engineer, it was not attempted to be shown that any correction had been made with respect to the pins. We have, then, the absence of the pins for two days next preceding the accident. Under ordinary circumstances, whether or not this period of time would be sufficient to charge defendant with constructive notice of the defect, would be a question for the jury to decide from all the evidence; but another fact here intervenes which avoids such inquiry. By the rules and regulations of defendant company it was made a duty of the engineer, daily on the completion of his run, to make written report, in a book kept in the office of the company for that purpose, of the condition of his engine, particularly specifying what, if any, corrections or additions were needed. This witness had on former occasions when the pins were missing, included such fact in his report, and the pins were thereupon renewed; so that there can be no doubt that the engineer, as well as defendant company, understood the requirement in the regulation to cover the absence of pins. In this instance the engineer admittedly failed to report the fact that the pins were out. On the witness stand he appealed from his own uncertain recollection to the book containing his report, and this being produced, showed that he made no report with respect to the absence of the pins. In passing upon the question of the defendant's negligence in connection with this accident, it is manifest that the promoting and proximate cause is to be found in the failure of the engineer to report the defect in the engine. Accepting this as the act of negligence, if responsibility attach to the defendant therefor, it must be because either the duty the company required of the engineer to report was a non-delegable duty, or, the engineer in connection with such duty was not a fellow servant with the plaintiff. One or the other of these positions must be established in order to justify recovery.

While this duty of inspecting and reporting the condition of the engine was of first importance, it was yet a very simple thing, at least so far as it related to such apparent and obvious defects as the one which caused this accident; and we are concerned with no other, the question being whether with respect to this particular matter, the company had a right to rely upon the vigilance and faithfulness of its engineer and act accordingly. It was a duty requiring no special skill or experience; whether the pins were in place or not could be ascertained by one man as well as another with no better eyesight. Faithfulness and attention were the only qualifications, and certainly no reason can be suggested why this should not be expected of one to whom was intrusted the more exacting and responsible duty of running the engine and to whom its care was intrusted. From any point of view it would seem a very proper requirement, and one likely to promote in a very direct way the general safety of employees and others, and quite as efficient as any that would be reasonable and practicable. Moreover, the duty thus cast upon the engineer was incidental to his duty in the use of the engine in the common employment. And this circumstance denotes a distinction that differentiates cases such as this, from those which hold under the general rule that the party to whom the employer commits the duty of maintaining the appliances used in a reasonably safe condition, is the latter's agent and representative. We find this distinction nowhere better defined than in the case of Steamship Company v. Ingebregsten, 57 N. J. L. 400. It is there said: " On this topic a rational distinction would seem to be that when the employee's duty to inspect or repair the apparatus, is incidental to his duty to use the apparatus in the common employment, then he is not intrusted with the master's duty to his fellow servant, and the master is not responsible to his fellow servant for his fault; but that, if the master has cast a duty of inspection or repair upon an employee who is not engaged in using the apparatus in the common employment with his fellow servant, then that employee in that duty represents the master, and the master is chargeable with his default." Our own cases are in line with the authority quoted. In P. & R. R. R. Co. v. Hughes, 119 Pa. 301, it is said: " If, however, the company employ competent

and skillful persons for the purpose of inspection, and afford them reasonable opportunities and facilities for the work under proper instructions, the company will not ordinarily be liable for the negligent performance of the work by their employees, to a fellow employee, unless the company knew, or by ordinary diligence ought to have known, of the defective manner in which the inspection was conducted."

Were the plaintiff and the engineer engaged in the common employment? An engineer's duties involve more than simply applying and regulating the motive power of his engine. The engine is under his care so long as he is in charge of it. He is expected to observe its working, see that it is supplied with those things necessary to maintain its efficiency, such as fuel and oil, and keep its several parts in place and in good condition so far as he may. Without any prescribed order or regulation it would be a duty incident to his position, to report any derangement or weakening of machinery which he himself could not at once correct. In this case the engineer knew that the pins were out of place ; that they had been removed for a temporary purpose, if not by his own act, with his approval. Clearly his duty required that he replace them or report the fact. His duty so to do was incidental to the common employment. The plaintiff's duty was auxiliary and supplementary to that of the engineer in the common work of maintaining the efficiency of the engine. His part was to clean the fire box and smokestack, to the same end that it was required of the engineer to see that the other parts of the machinery were kept in good working order. Their work was co-operative, within the same circle of appointment, and it is impossible to regard them as other than fellow servants.

The defendant's seventh point asked for binding instructions in favor of the defendant. This point was refused, and its refusal is the subject of the sixth assignment of error. This assignment of error is sustained.

The judgment is reversed.