N. Y., L. E. & W. R. CO. v. HENRY LYONS.

ERROR TO THE COURT OF COMMON PLEAS OF WAYNE COUNTY.

Argued February 20, 1888—Decided March 19, 1888.

1. Where an employee has knowledge that machinery is defective and dangerous, and in the course of his employment continues to use it without notifying his employer of such defect and asking for its repair, he voluntarily accepts the risk and cannot recover damages in case of injury from such cause: Mansfield Coal Co. v. McEnery, 91 Pa. 185, followed.

2. A flagman, the plaintiff in an action against a railroad company for injuries received because of an alleged defective step when attempting to board an engine, having testified that he knew the condition of the step and the difficulty of getting upon it beforehand, yet attempted to board the engine when in motion, by means of such step, in the night time, incumbered with two lanterns, and knowing he had the right and power to bring the engine to a stop, it was error not to instruct the jury upon request, that he was guilty of contributory negligence and could not recover.

Before Gordon, C. J., Paxson, Sterrett and Green, JJ.; Trunkey, Clark and Williams, JJ., absent.

No. 111 July Term 1887, Sup. Ct.; court below, No. 267 May Term 1885.

On August 5, 1885, a summons in case was issued by Henry Lyons against the New York, Lake Erie and Western R. Co., to recover damages for personal injuries. The declaration set out the employment of the plaintiff as a brakeman on the defendant's road, and his attempt to get upon an engine in motion after flagging the train drawn by it and charged: " That owing to the unsafe and improper steps, appurtenances and appliances of and on said engine No. 337, and for want of steps of reasonable height, by means of which plaintiff and others so situated and required might get on board, the plaintiff was thrown under the wheels of the car and injured," etc.

At the trial on October 13, 1886, testimony was introduced from which it appeared that the plaintiff had been employed as brakeman and flagman by the defendant company for over two years, when on the night of October 16, 1883, being on a coal train which was laboring he was sent back by his conductor to flag another coal train, drawn by engine No. 337, and have it run slow. After flagging the pursuing train, he boarded the engine and rode on it to Millville, where it stopped for water. He then got off the engine and went ahead after his own train. When he could see beyond a curve, he saw his own train, as he stated, still laboring and started back to warn the pursuing train again. He signaled the engineer of No. 337, but his signal was not seen; and, as the train came up at the rate of four to six miles an hour, he attempted to board the engine again. He caught the tank handle with his left hand, having two lanterns, a red and a

blue, in his right hand or on his right arm, and stepped with his left foot upon the truck about twenty inches high. As he reached his right foot for the tank step, higher, he claimed, than usual and than it ought to have been, he slipped from the truck so that his right foot was caught under the wheel of the car and so crushed that a necessary amputation followed the next day.

It was admitted by the plaintiff that he knew he had the right to bring the signaled train to a full stop, but there was a contention whether he had been instructed by his conductor that it was his duty in flagging trains to get aboard and give the engineer the proper warning as soon as the train was running slow enough, as he testified, which instructions were denied by the conductor. There was also a dispute whether the plaintiff had ever been on board engine No. 337 before that night.

The only charge of negligence was in the construction of the steps.

The plaintiff, testifying in his own behalf, was asked whether he had received any instructions from his conductor, in reference to flagging trains, and if so, what they were. The question being objected to, the answer was excluded, unless some authority on the part of the conductor was shown. The plaintiff then testifying that he never received any instructions as to his duties as flagman, except such as he received from the conductors of the trains on which he was employed, the offer was then renewed and again objected to.

By the court: In view of the testimony that this witness had no other means of being informed as to his duties, but was under the direct control of the conductor, we think this is evidence. Objection overruled.[1]

Under this offer the plaintiff testified that his conductor had instructed him: "If they happen to run slow, and they wanted them to run slow, I should flag them and get on and tell them. And if I wanted to bring them to a dead stop, I had the power to do it. Sometimes there is a wreck ahead and we have got to stop them dead; and other times we run them slow."

The court, SEELY, P. J., in the charge to the jury, answered certain of the points presented as follows:

Plaintiff's points, inter alia:

3. If the step on the engine tank was so high as to render its use dangerous, and notice of its condition had been brought home to the company defendant, they would be responsible for any injuries arising from its use thereafter, unless the party using it were also negligent or at fault in the matter.

Answer: That we affirm. That proposition, we think, recognizes the principle which we have already laid down to you, that the use should be such as the company have a right to expect their employees to make of the appliances. Because we think that if the employees were using the appliances in a way contrary to the known orders of the company, that would be negligence, and such "fault" as is mentioned in the latter part of this point.[2]

5. If the plaintiff was not at fault, and the negligence of the defendant was the direct and proximate cause of the injury to him, they are responsible for it, no matter how hazardous may have been the nature of the employment.

Answer: That we affirm. That assumes that the injury occurred solely from the fault of the defendant, and without any negligence on the part of the plaintiff. If that be true, it is immaterial how hazardous the employment.[3]

6. If, when the plaintiff attempted to board the engine, he was acting in the discharge of his duties in accordance with instructions received from his conductors, and in accordance with the general custom of flagmen on the road, he cannot be affected, nor his right prejudiced in so doing, by any printed order or rule of the company in contravention of such instructions and general custom, which had never been shown him and to which his attention had never been called.

Answer: We affirm this proposition. And yet, we desire you to understand it. It assumes that the plaintiff had no knowledge, or that the rules of the company had never been shown to him, and that his attention had never been called to them. And we say that he would not be concluded by a printed order or rule of the company which had never been shown to him, and to which his attention had never been called. And we say to you, further, that if you believe that this plaintiff never had his attention called to any rules of the company, and had no knowledge of any place where he might rea-

Charge of Court below.

sonably have access to the rules of the company in order to inform himself of his duty, then he had a right to take instructions from the conductors as to what his duty was. If the company furnished him no other means of informing himself, we think they should be held responsible for the instructions given to him by the conductors.[4]

7. If the jury believe from the evidence that the plaintiff acted in good faith, believing it to be his duty to get on board the engine No. 337, at the time and in the manner stated by him, and at the time he did so the engine was moving at a rate of speed so moderate that a man of ordinary prudence, acting in the same capacity and under the same circumstances, would not have hesitated to make the attempt, he cannot be charged with negligence in so doing.

Answer: We cannot affirm this point without qualification. Good faith is not enough. If you believe that the rules were placed where he had access to them, and his attention was called to them, and he was requested to inform himself as to these rules, his failure to do so might be negligence. He might refuse to inform himself of the rules of the company, and then in entire good faith, act in violation of those rules. If he did his duty with reference to informing himself of the rules of the company, and what was required of him, and then acted in good faith and in the belief that he was doing what the company required of him, then we think this point should be affirmed. But we think that the point cannot be affirmed without this qualification, as to his having performed his own duty in regard to informing himself as to the rules.[5]

Defendant's points, inter alia:

3. An employer is entitled to assume that his employee will not needlessly expose himself to manifest dangers in the performance of his duties, and if, being a person of ordinary intelligence, he does so, the employer is not responsible for the consequences, and if the jury believe the plaintiff did so expose himself, he cannot recover.

Answer: That is correct. No person has a right to expose himself, needlessly, to dangers that are manifest. and then call upon some other person to compensate him for his injuries so received.

4. That the plaintiff having admitted that he knew the step

in controversy was so high as to render it difficult to get on to the train, and having continued to. use it in such condition, without giving notice to his employer of its unsafe and improper condition, and asking him to repair it, he voluntarily accepted the risk, and in case of injury from such cause cannot recover damages therefor.

Answer: This matter is for you. You have the plaintiff's own statement as to his getting upon the train on the trip down to Port Jervis, near Stairway. A person who is employed about a matter which is attended with danger, who discovers some imperfection in the machinery or appliances which he is required to use, should report the defect to those whose duty it would be to repair it. It might be necessary for the employee to still use that machinery before it could be repaired. If he did so use it, and the condition of the machinery indicated extraordinary danger, the duty would rest upon him to use extraordinary care to protect himself. In other words, a man who is required to be employed about machinery, the condition of which is unusual, and such as to occasion unusual danger, is bound, on his part, in using it, to exercise unusual care, and if, neglecting the unusual care, he should be injured by such machine or appliance, then he would be guilty of contributory negligence, and could not recover. Now you have the evidence as to his getting upon this train at Stairway, and you have the evidence as to his getting upon this train before it reached the water tank at Millville. Did he, from his experience with this engine, know, at the time he attempted to get upon it when he was injured, that the step was so arranged as to require unusual caution upon his part, in getting upon it? Did he know it at the time? If he did, he ought to have used unusual caution. Did he use such caution, and such care, as you think a man of ordinary prudence and judgment should have been required to use, under the circumstances? If he did not, he would be guilty of contributory negligence, and cannot recover.[6]

5. The plaintiff having testified that he knew the condition of the step, and the difficulty of getting on to it, and having attempted to get on the train by means of that unsafe and inconvenient step, in the dark, while the train was under way, when he admits he had the power and right to stop it, is guilty

Charge of Court below.

of contributory negligence, and cannot recover, and therefore the verdict must be for the defendant.

Answer : We refuse that point, because it requires us to take this case away from you, and to determine the question of contributory negligence ourselves. We think that, under the evidence, that question must go to you for determination, as a question of fact.[7]

6. The plaintiff having shown that he attempted to board a moving train to which he did not belong, and in the dark, while he admits that he had the right to compel it to stop until he got on, and having shown nothing in the rules and regulations of the company defendant, requiring him to do so, voluntarily placed himself in danger, and if thereby injured he is guilty of contributory negligence, and cannot recover, and the verdict must be for the defendant.

Answer: We decline to affirm this point. It requires us to give you positive instructions as to what your verdict must be, which we decline to do in this case.[8]

8. Any instructions by a conductor, in opposition to the general rules of the company, unless special authority is shown to give such instructions, cannot bind the company.

Answer : We say as to that point that the employees of the company have a right to be informed of their duties, and the manner in which they shall be discharged. If the corporation provides the reasonable and necessary means of communicating to employees the rules regulating their conduct, they should be governed by those rules of the corporation. If the corporation does not use such means as are reasonable and necessary to communicate their rules to their employees, then the employees may take their instructions from such officer as the company choose to put in immediate control over them. And we think, under such circumstances, if you believe the company did not provide the reasonable means of communicating their rules to this plaintiff, then he might take his instructions from the conductors, and he would be protected by those instructions.[9]

10. That the company defendant, were not bound to so construct their steps as to make it safe for persons to get on and off a moving train, but are only held to make it reasonably safe to get on and off when the train is not in motion, and it

being admitted by the plaintiff and proved that there was no danger with the step as it was, when the train was stopped, there was no negligence on the part of the defendant, and the plaintiff cannot recover.

Answer : In an absolute sense, taking into consideration the printed rules of the company, this proposition is correct and sound. It needs to be qualified by saying to you that if the company did not provide the means whereby the plaintiff could have knowledge of their rules, and he was instructed by the conductor that he should board moving trains, as soon as he could, when they slowed up, then we think that the company should be held to the measure of responsibility which would follow those instructions. But if, on the other hand, the company communicated to their employees their rules, or did what they could reasonably be asked to do with reference to communicating them, then the emyloyee should be held by those rules, and the company was only bound to so construct the step that it would be reasonably safe when used in accordance with their rules regarding the running of trains and the employment of flagmen.[10]

11. The plaintiff being an employee in a responsible position, was bound to make himself acquainted with the rules and regulations, and if he failed to do so, he cannot set up his ignorance of them as an excuse for not obeying them.

Answer : We affirm that proposition, if you find as a fact, that the company did their duty in placing the rules where he had reasonable access to them, and could inform himself. If the company did not place the rules within his reach, then we cannot hold that he was bound to inform himself of them, but if they placed them where he had access to them, and he was requested to inform himself, then it was his duty to examine those rules, and ascertain what they were.[11]

The jury returned a verdict in favor of the plaintiff for $6,000. On the hearing of a motion for a new trial, an order was entered that the rule be made absolute unless the plaintiff filed an abatement of $1,000, which was done and judgment entered. Thereupon the defendant took this writ assigning for error:

1. The admission of the plaintiff's offer.[1]

2–5. The answers to the plaintiff's points.[2 to 5]

6. The answer to the defendant's fourth point.[6]

7. The answer to the defendant's fifth point.[7]

8–11. The answers to defendant's points.[8 to 11]

12. The submission of any question to the jury.

*Mr. George G. Waller*, for the plaintiff in error:

1. The plaintiff had been in the employ of the company for about two years. By contracting for the performance of hazardous duties, he assumed such risks as were incident to their discharge from causes open and obvious, the dangerous character of which he had full opportunity to ascertain: P. & C. R. Co. v. Sentmeyer, 92 Pa. 281; Brossman v. Railroad Co., 113 Pa. 490. The difficulty with regard to the step was nothing new, but was open and obvious. A man cannot place himself in a position of known danger and recover for an injury resulting therefrom: Jackson v. Railroad Co., 31 Kan. 761; C. & A. R. Co. v. Murphy, 17 Ill. App. 444; Central Trust Co. v. Railway Co., 26 Fed. R. 897.

2. All the witnesses agree that it is dangerous to attempt to board a train moving at from 4 to 6 miles an hour, in the night time. The plaintiff's negligence, therefore, directly contributed to the production of the injury complained of, and he cannot recover therefor: McCorkle v. Railway Co., 61 Ia. 555; Dowell v. Railroad Co., 61 Miss. 519.

We submit that not only was the plaintiff guilty of contributory negligence, but that no negligence was proved against the defendant company.

*Mr. George S. Purdy*, for the defendant in error:

1. The conductor is the person to administer the rules of the company and apply them to the particular circumstances of the case: O'Donnell v. Railroad Co., 59 Pa. 239; Chicago etc. R. Co. v. Ross, 112 U. S. 383.

2. It is required of the master to furnish and maintain suitable instrumentalities for the duties of his servants: Patterson v. Railroad Co., 76 Pa. 389; such machinery as is reasonably and adequately safe: Penn. & N. Y. Canal & R. Co. v. Mason & Leslie, 109 Pa. 296; Johnson v. Bruner, 61 Pa. 61; O'Donnell v. Railroad Co., 59 Pa. 248: Ardesco Oil Co. v. Gilson,

63 Pa. 147; Tissue v. Railroad Co., 112 Pa. 91; Baker v. Railroad Co., 95 Pa. 211; P. W. & B. R. Co. v. Keenan, 103 Pa. 124; and the risks assumed by the servant are those only which occur after due performance by the employer of those duties enjoined.

3. How was the plaintiff to learn his duties except from the general custom of the road and from instructions by his conductors? A brakeman, in the absence of contrary instructions, cannot be charged with negligence in doing that which is in conformity with the usual custom of brakemen: Spong v. Railroad Co., 58 N. Y. 56; Ford v. Railroad Co., 110 Mass. 240.

4. The rule that the continued use of a defective appliance precludes a recovery, is not without exceptions. If the danger is one which a person of ordinary prudence would believe could be entirely avoided by the use of certain additional precautions, the servant, by continuing in his service, would not lose his right to recover for damages suffered by him while using such precautions: Shear. & Redf., Neg., 3d ed., 125. The danger was not such as to threaten immediate injury: Patterson v. Railroad Co., 76 Pa. 393; Tissue v. Railroad Co., 112 Pa. 91; Beach, Cont. Neg., 373.

5. It is not negligence per se for even a passenger to get on or off a slowly moving train, but it is a question for the jury under the particular circumstances: Robson v. Railway Co., 12 Eng. R. 312; s. c. 19 Eng. R. 298; Johnson v. Railroad, 70 Pa. 357.

6. The facts of the case were for the jury. Negligence may be determined by the court, only where the measure of duty is the same under all circumstances: W. C. & P. R. Co. v. McElwee, 67 Pa. 311; McCully v. Clarke, 40 Pa. 406; Phil. Pass. Ry. Co. v. Henrice, 92 Pa. 431. When the standard of duty shifts, the question is for the jury: Kay v. Penn. R. Co., 65 Pa. 269; Sullivan v. P. & R. R. Co., 30 Pa. 234; McKee v. Bidwell, 74 Pa. 218.

OPINION, MR. JUSTICE PAXSON:

The plaintiff brought this action in the court below to recover from the defendant company damages for injuries received while in their employ as a brakeman. The facts, as we gather them from his own testimony, are substantially as fol-

lows: On the 17th of October, 1883, he was on extra coal train No. 4. About three o'clock in the morning the train stopped for water at Millville, and the plaintiff was sent back to flag another extra train and order it to run slow. This train was following the one of plaintiff and was drawn by engine No. 337. The plaintiff was instructed by his conductor to go back and flag the following train. He says: "It was a cold morning and we were running slow, and we had stopped there to take water, and he was following us and I was put off to flag him. I was put off to go back and let them know what was the matter with our train, and have them look out for us there." The plaintiff fully performed this duty; he flagged the train, told them what was the matter, and then started for his own train. Up to this time no accident had happened. He ran after his own train for a short distance and then turned back. This fully appears from his cross-examination: "Q. You didn't gain on it (the train) as you walked up? A. I ran up around to see how fast they were going. Q. When you found you couldn't reach them, you turned? A. Yes, sir. Q. Did you walk any distance? A. I walked back a ways until the train catched me." When the train came up it was going from four to six miles an hour. He says he signaled it as it approached, but the conductor did not see him and made no answering signal. He then attempted to get on the engine. The night was dark, and he had in his right hand two lanterns. He took hold of the handle of the tender with his left hand and attempted to get his foot on the step. The step was a high one; higher than usual; his foot slipped, got on the rail and was crushed.

The plaintiff bases his charge of negligence against the company wholly upon the unusual height of the step. It was not contended, however, that it was dangerous to get on when the engine was stationary; at such times it was only inconvenient. The plaintiff had been on the engine before, knew of its danger, and made no complaint to the proper authorities; nor did he for such reason decline to remain in the service. The plaintiff further alleged and so testified that at the time he turned back to the train and was injured, his purpose was to flag it the second time. That I may do no injustice I give his precise words: "I flagged them and told them what

was the matter, and when they were taking water I saw our train ahead of us, and I started towards our train, and I saw our train was going slow, I came back to flag them again, and tell them, and they were started on then, about four miles an hour, and I didn't get any answer from the engineer that he saw me and when the engine came along I got on and I missed the step and slipped under. The step was too high."

It is clear, notwithstanding the above statement, that when the plaintiff attempted to board the engine he was under no duty to either stop or flag the train. He says himself that he had no orders to do so. He had previously flagged it, delivered his instructions, and performed his whole duty. He turned back and attempted to board this train because it was easier than to overtake his own train. He admits that he had the power to stop the train and preferred taking his chances of getting on safely to remaining until it stopped, or following his own train until he could overtake it.

We have then, upon the admitted facts, the case of an employee attempting upon a dark night to get on board a moving engine with a very high step, known by him to be so, with his right hand incumbered with two lamps, when under no duty to board it. In considering the assignments of error, regard must be had to the facts as they existed at the time the points were presented and the rulings made. I will now refer to them briefly:

1st. This assignment is sustained. It was error to permit the plaintiff to testify as to what instructions he had received from his conductor in reference to flagging the train, for the reason that he was not engaged in any such duty when injured.

2d, 3d, 4th, and 5th. In view of the admitted facts the plaintiff's third, fifth, sixth, and seventh points should have been refused. They need no discussion.

6th. The defendant's fourth point should have been affirmed without qualification. The point was as follows:

" That the plaintiff having admitted that he knew the step in controversy was so high as to render it difficult to get on to the train, and having continued to use it in such a condition, without giving notice to his employer of its unsafe and improper condition, and asking him to repair it, he voluntarily

accepted the risk, and in case of injury from such cause cannot recover damages therefor."

The learned judge referred this to the jury. It is at least possible that his attention was not called to our own cases upon this subject. Our attention has certainly not been called to them, although there are several which rule the question pointedly. The only authorities cited are those of other states. It is sufficient for present purposes to refer to Mansfield Coal Co. v. McEnery, 91 Pa. 185, where it was said: "It has been repeatedly held, in fact there is no conflict of authority upon this question, that where an employee has knowledge of machinery being defective and dangerous, and in the course of his employment continues to use it, without notifying his employer of such defect and asking him to repair, he voluntarily accepts the risks and cannot in case of injury from such cause recover damages."

The above rule is not only settled law but is founded on justice and good sense. In a large majority of cases employees are better informed than their employers as to the safety of machinery in use by them, as they have far better means of information. Where a person employing a large number of men engaged in a particular work, has provided machinery, tools, etc., suitable for their occupation, and the same become unfit for use or dangerous from wear or other cause, and they continue to use them without notice to the employer of such defects, it would be a hard rule to hold him responsible. I am not now speaking of hidden defects or dangers which the employee cannot see and know, but of such open and palpable defects as existed in the case of the bridge in the Mansfield Coal Co. case, and of the step in the case in hand. Under such circumstances, to refer such a point to the jury is to fritter the rule away and allow it to be overridden in every case. A just administration of the law will not allow this to be done.

The seventh assignment alleges that the court erred in not affirming the defendant's fifth point. The said point was as follows: " The plaintiff having testified that he knew the condition of the step, and the difficulty of getting on to it, and having attempted to get on the train by means of that unsafe and inconvenient step, in the dark, while the train was under

way, when he admits he had the power and right to stop it, is guilty of contributory negligence, and cannot recover, and therefore the verdict must be for the defendant."

All the facts of which this point is predicated appear in the testimony of the plaintiff himself; to which might be added the fact already referred to, that his right hand was incumbered with two lamps. Where the facts are admitted it is competent for the court to declare the effect of them. This has been held so often that it would be an affectation, not of learning, but of industry, to cite them. The point should have been affirmed. We are compelled to say so or overrule Mansfield Coal Co. v. McEnery and numerous other cases. This we are not prepared to do until convinced that they were erroneously decided.

This view of the case renders its further discussion unnecessary.

Judgment reversed.