ALFRED DIEHL v. LEHIGH IRON CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF LEHIGH COUNTY.

Argued February 3, 1891—Decided March 9, 1891.
[To be reported.]

1. A servant who voluntarily undertakes a perilous employment, the dangerous character of which he is acquainted with or has the opportunity to learn, assumes the risks naturally and reasonably incident thereto, even though he undertakes to perform the hazardous duty because urged to do so by the master.
(a) The plaintiff was employed by the defendant to blast out "salamander" from the bottom of an iron-furnace, and directed to use dynamite in the blasting. On his complaining to the defendant's superintendent that the salamander was too hot to work in, the latter told him that it was not too hot, and that the work must be done.
(b) The plaintiff then drilled a hole in the salamander, and, in the superintendent's absence and knowing that the hole was red-hot at the bottom, inserted a dynamite cartridge, which almost instantly exploded, injuring him. The superintendent had not directed dynamite to be put into that hole, or into any other presenting similar conditions:
2. The evidence showing that the plaintiff had had opportunities to become acquainted with the explosive character of such cartridges, under the influence of heat, and knew the danger he was encountering, he alone assumed the risk of inserting the blast, in the conditions existing at the time, and was not entitled to recover for his injuries.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, Mc-COLLUM and MITCHELL, JJ.

No. 124 July Term 1890, Sup. Ct.; court below, No. 65 April Term 1888, C. P.

Statement of Facts.

On March 15, 1888, Alfred Diehl brought trespass against the Lehigh Iron Company, for negligence causing to him personal injuries. The defendant's plea was not guilty.

At a second trial of the cause, on April 30, 1890, the following facts were shown:

The defendant company was operating several iron furnaces. In November, 1887, one of the furnaces having gone out of blast, the plaintiff and others were engaged as employees of the defendant in removing from the stack the refuse matter known as salamander, deposited in the bottom of it. This salamander being in a solid mass, it took a long time for it to cool, and it was so hard that it had to be blasted out. On the evening of November 19, 1887, the plaintiff, who had then been engaged in this employment, working on the night shift, for about a week, was injured by the premature explosion of a dynamite cartridge. He testified that, between five and six o'clock in the evening, he and the other men engaged on the night shift were standing at the furnace, when Harrison Bortz, the defendant's superintendent, came and inquired why they were not at work; that the witness replied that the furnace was too hot to work in, and that they would let it stand till morning, so that the salamander might cool off; that Bortz then said: " Oh, pshaw, we have dynamite here a-purpose, that wont explode from heat," and added that the company were in a hurry to have the work done, that it was not too hot to work and the men must go on with the work without delay; that the men then went to work, and the plaintiff drilled a hole into the salamander, which was so hot that the drill had to be taken out from time to time to cool it off, and it got hotter and hotter the further down the hole was drilled; that, after completing the hole, the plaintiff put some sand in the bottom of it, and then lowered a dynamite cartridge by means of the fuse attached to it: " Q. Did this explosion happen instantaneously after you had loaded the hole, or did it take some time?　A. It didn't take half a second, I don't suppose; just time enough to put the sand down, and I couldn't light the fuse and hadn't time to get away."

The plaintiff testified, on cross-examination, that he had put off several blasts of dynamite in the salamander prior to November 19th, and that he knew the work he was engaged in was a dangerous work " in one sense of the word " and required a

great deal of care on his part. Bortz, the superintendent, was not present when the accident occurred. He denied, testifying for the defendant, that any conversation between himself and the plaintiff, about using dynamite, occurred at the time and place mentioned in the plaintiff's testimony, or that he had ever said to the plaintiff that it would not explode in heat, although he admitted saying to the plaintiff, on one or two occasions prior to November 19th, that dynamite was not as dangerous to use as black powder. Portions of the testimony are quoted in the opinion of the Supreme Court, infra.

At the close of the testimony, the court, ALBRIGHT, P. J., charged the jury in part as follows:

It is necessary that you should have a theory as to what the wrong is that is to be imputed to Mr. Bortz, if any wrong is to be imputed to him, and you will bear in mind that the law is that a man who goes into the employment of another undertakes all the risks of that employment. It is taken to be part of the contract of employment, that the employee takes the risks of the employment he engages in. It is also the law that one who engages to work along with other workmen, cannot hold his employer responsible, if an accident happens to him by reason of the negligence, or carelessness, or wrong-doing of a fellow workman. So, the employer, in this case the Lehigh Iron Company, was not responsible for any accident or injury that might happen to its employee, Alfred Diehl, in the line of his employment. But this general statement must be qualified by saying that the employer was under an implied contract to exercise reasonable care, and to provide and maintain suitable instruments and means to carry on the work in which its servants were engaged. The employer must provide tools, machinery, materials and appliances which are reasonably safe and suitable for the purposes for which they are used. If he fails to do this, and an accident happens, resulting in injury to his employee as a consequence, then it may be said that the employer has been guilty of negligence. If there was negligence in the present case, in what did it consist?

You will see at once that if any blame is to attach to the company defendant, and any damages are to be awarded against it, it must be by reason of what Mr. Bortz did, or omitted to

do, because it is not claimed here that any other officer of the company, or any one else acting for the company, did anything which brought about Diehl's injury. It must have been the fault of Bortz, if it was the fault of any one on the part of the company. If he was at fault, then in what did his fault consist? It did not consist in employing men to clean out this furnace, for that was a lawful and necessary thing to do. It did not consist in saying to Mr. Diehl, "It is not too hot, go in and work," for that was the mere expression of an opinion.

I will say here, in passing, that the law is that a servant is not bound to risk his safety in the service of his master, and he may, if he sees fit, decline to do what his master tells him to do. So, when Bortz said to Diehl, if he did say so, " It is not too hot, go in and work," that was not negligence. Mr. Diehl testifies that he objected to going in at the time in question, and that Mr. Bortz said they should go in and should work at it. This, it is said, was shortly after five o'clock in the evening, and the plaintiff and the other men then did go in and work, and that some time between eight and nine o'clock in the evening the accident happened. I say to you, gentlemen, that Mr. Bortz's urging the men to go into the stack and work, was not an act of negligence on his part, and does not make the company liable, because the men could go in or not as they saw fit.

There is, however, a principle in law that where the employee is directly under the eye of his master, and he does. a thing which he might know was dangerous, and for which he could blame nobody but himself if an accident happened to him under ordinary circumstances, yet, if the master, being present, commands him, urges him to do the dangerous act, and he does it and is injured, then the master may be held responsible. But, at the time the accident in the present case happened, Mr. Bortz was not present. According to the plaintiff's testimony, he had not been there for two hours or more; and so, the principle to which I have just alluded does not apply, and the company can not be held liable on that ground. [According to my view of this case, gentlemen of the jury, the manner in which you are to determine the liability or non-liability of the defendant for this injury to the plaintiff is this: Did the defendant company provide and order to be employed in this work an appliance,

Charge of Court below.

or a means, which was reasonably safe to be used under the circumstances, or not?] [6]

The plaintiff, and another witness for him, testify that the plaintiff objected to working in this furnace at the time, and said that the water should be permitted to run in during the night, and that the next morning the work could go on, and that it was too hot to go on then; and probably he testified that something was said about its being too hot to use powder, and he further testifies that then Mr. Bortz said that it was not too hot, and that they should go on with the work, and that there was dynamite on hand, and that dynamite was safe, and that it did not explode by heat. Mr. Bortz denies that he said this; in fact, he denies that he was at the place where the plaintiff says this conversation took place, on the evening of the accident a few hours before it happened, though Bortz does admit that he had talks on one or several occasions with the plaintiff about the work going on, and that he urged that it should be carried on without delay, and that dynamite could be used, and that dynamite was not as dangerous in a hot place as black powder; and it may here be remarked that according to all the evidence it is not as dangerous in that regard.

You will bear in mind that when the using of the dynamite was spoken of by Bortz, according to both his own version and that of the plaintiff, the hole had not yet been bored in which the cartridge afterwards exploded prematurely and caused the injury, and you must bear in mind that the plaintiff did afterwards bore the hole, he and those with him, and that he put the cartridge in the hole. Gentlemen, if, under the circumstances, the plaintiff should have known that this cartridge would explode by reason of the great heat in the bottom of the hole, and he yet put the cartridge in, then he was guilty of contributory negligence, even though the defendant had also been to blame in sending him there; and, in fact, under that view of the case, if you find that that is the correct view, he would have been guilty of all the negligence appearing in the case, and ought not to recover, because he knew that the dynamite was to be used for the very purpose of exploding and shattering this refuse. He knew that it was to go off, and if, knowing it to be an explosive, which he undoubtedly did know, just as well as Mr. Bortz did, he used it under such cir-

Charge of Court below.

cumstances that he ought to have known that it would cause mischief, then he alone is to blame for the resulting injury.

[But if, on the other hand, you find that Diehl did not know, and had not the means of knowing that dynamite would explode by being put in a heated place, such as the bottom of this hole evidently was, and that the defendant's superintendent urged the use of the dynamite just in that way, knowing how hot the place was, and knowing that the holes were to be bored down into the hot mass, and insisted on the dynamite being used, and the superintendent ought to have known, considering the circumstances,—that is, the business he was performing there as manager,—if he ought to have known that it was unsafe, and he still urged and insisted upon the use of the dynamite, then it might be said that he provided and directed the use of a means which was dangerous, and, injury ensuing to the workman, if it is found that the workman was not to blame, then there may be a recovery.] [7]

You will therefore determine, gentlemen of the jury, whether it is proved that the defendant was guilty of negligence,—and the negligence could consist only in the one thing I have indicated to you,—and if that has been successfully imputed to the defendant, that is, if negligence in that regard is proved, then the plaintiff is entitled to recover, unless you find that he also was to blame, in which case there could be no recovery, even although the defendant's superintendent was guilty of negligence. . . . .

The defendant requests the court to charge:

1. Under all the evidence the verdict must be for the defendant.

Answer: Refused.[1]

7. The alleged statement of Mr. Bortz that dynamite is safe and will not explode in heat, was not the proximate cause of the injury.

Answer: Literally, this is true; but to affirm it would tend to mislead the jury. It is but a part of what the plaintiff alleges to have been the negligent act. The point is refused.[2]

8. That according to the uncontradicted testimony, water and appliances were at hand at the furnace to cool off the material where the blasting was being done, and the plaintiff failed and neglected to use them; that he, knowing that the material

Arguments.

to be blasted was hot, and, without resorting to any means to cool it, voluntarily put the explosive in the hole, and the explosion occurred and he was injured; by so doing he was guilty of negligence and cannot recover.

Answer: Refused.[3]

9. The plaintiff admits that he knew of the dangerous character of the work he was performing and that he had a fair opportunity to become acquainted with the risks naturally and reasonably incident thereto: he was not required, with this knowledge, to continue the work and submit himself to such risks; by doing so he assumed all the probable consequences, and cannot recover in this case.

Answer: Refused.[4]

The jury returned a verdict for the plaintiff for $331.75. A rule for a new trial, entered by the court on its own motion, having been discharged and judgment entered, the defendant took this appeal, assigning for error, inter alia:

1–4. The answers to defendant's points.[1 to 4]

6, 7. The parts of the charge embraced in [ ] [6] [7]

*Mr. Edward Harvey*, for the appellant:

1. There can be no negligence without a breach of duty: Balt. etc. R. Co. v. Schwindling, 101 Pa. 261. The measure of duty varies with the relations out of which it arises. Here the relation was that of master and servant. Ordinarily, a master is not responsible if the servant is injured while performing the work he was employed to do. By accepting the employment the servant assumes all risks naturally and reasonably incident thereto: Patterson v. Railroad Co., 76 Pa. 389; Sykes v. Packer, 99 Pa. 465; Payne v. Reese, 100 Pa. 306; Tissue v. Railroad Co., 112 Pa. 91; Allison Mfg. Co. v. McCormick, 118 Pa. 519; Green St. Ry. Co. v. Bresmer, 97 Pa. 106; Rummell v. Dilworth, 111 Pa. 343; Phila. etc. R. Co. v. Hughes, 119 Pa. 301; Clough v. Hoffman, 132 Pa. 626; Woodward v. Shumpp, 120 Pa. 458.

2. When, with knowledge of the heat of the furnace, the plaintiff obeyed the order to go to work, he took upon himself the risks of the work: Schwenk v. Kehler, 122 Pa. 67; Pawling v. Hoskins, 132 Pa. 618; Frazier v. Lloyd, 23 W. N. 178;

Phila. etc. R. Co. v. Hughes, 119 Pa. 301; Mansfield Co. v. McEnery, 91 Pa. 185; New York R. Co. v. Lyons, 119 Pa. 324; Patterson v. Railroad Co., 76 Pa. 390; Smith v. Drake, 125 Pa. 501; Green St. Ry. Co. v. Bresmer, 97 Pa. 107; Phila. etc. R. Co. v. Keenan, 103 Pa. 124; McDonald v. Iron Co., 135 Pa. 1; Beittenmiller v. Brewing Co., 22 W. N. 33; Sykes v. Packer, 99 Pa. 465; Ciriack v. Woolen Co., 146 Mass. 184; O'Keefe v. Thorn, 24 W. N. 379. There was no evidence that dynamite was not a suitable and proper explosive, and the presumption is that the master furnished a substance suitable for the purpose for which it was to be used: Grimont v. Hartman, 17 W. N. 252.

3. Ordering the use of an explosive when only explosives could be used, was not the proximate cause of the plaintiff's injury, nor was the mere order directing the work to proceed. What, then, was the proximate cause? Surely it was the act of the plaintiff in voluntarily putting the explosive into a red-hot mass of cinders, and that was an act over which the defendant had no control. The plaintiff was to do the blasting, and was to judge of the proper time and place to use the explosive. He was responsible for the exercise of judgment and discretion in this, and to his failure to use good judgment the accident is chargeable. In such a case, the question of proximate cause is for the court: Pass. Ry. Co. v. Trich, 117 Pa. 390; and, as the accident was not shown to have been caused by any negligence of the defendant, there can be no recovery: Allegheny v. Zimmerman, 95 Pa. 287; Pittsburgh S. Ry. Co. v. Taylor, 104 Pa. 306; West Mahanoy Tp. v. Watson, 112 Pa. 574; s. c. 116 Pa. 344.

*Mr. Arthur G. Dewalt* (with him *Mr. Milton C. Henninger*), for the appellee:

The court below very carefully submitted this case to the jury, and the evidence was sufficient to justify the submission of the question whether the injury to the plaintiff was occasioned by the negligence of the defendant: Tissue v. Railroad Co., 112 Pa. 91; Green St. Ry. Co. v. Bresmer, 97 Pa. 103; Patterson v. Railroad Co., 76 Pa. 389; Clarke v. Holmes, 7 Hurlst. & N. 937. In Beittenmiller v. Brewing Co., 22 W. N. 33, cited by the appellant, the carpenter injured was not in the

employ of the brewing company, and he was ordered to go back and do the work, not by his employer, but by the brewing company's superintendent. That case is not in point here.

OPINION, MR. JUSTICE GREEN:

The learned judge of the court below correctly charged the jury when he said to them: "I say to you, gentlemen, that Mr. Bortz's urging the men to go into the stack and work, was not an act of negligence on his part, and does not make the company liable, because the men could go in or not, as they saw fit." He also correctly said that the defendant company would not be liable upon the theory that the master was present and commanding the dangerous work to be done, at the time of the accident, because Bortz, who represented the master, was not present, and had not been for two hours or more before the accident occurred. But he thought, and so charged the jury, that the question of liability or non-liability of the defendant depended upon this: "Did the defendant company provide and order to be employed in this work an appliance, or a means, which was reasonably safe to be used under the circumstances, or not?" and on that issue or question the case was given to the jury.

It is true, the learned judge did also say that the hole had not yet been bored, and was in fact bored afterwards by the plaintiff, and that he put the cartridge in the hole; and that, if the plaintiff should have known that the cartridge would explode by reason of the great heat in the bottom of the hole, he would be guilty of contributory negligence, and could not recover even although the defendant had been to blame in sending the plaintiff there. And he added: "And, in fact, under that view of the case, if you find that is the correct view, he would have been guilty of all the negligence appearing in the case, and ought not to recover, because he knew that the dynamite was to be used for the very purpose of exploding and scattering this refuse. He knew that it was to go off, and if, knowing it to be an explosive, which he undoubtedly did know, just as well as Mr. Bortz did, he used it under such circumstances that he ought to have known that it would cause mischief, then he alone is to blame for the resulting injury." All this was entirely correct; and if the learned judge had

added that it was the uncontradicted evidence of the plaintiff himself that Bortz was not present when the hole was bored, and knew nothing of it, and had not directed that any blast should be put in a hole that was red-hot at the bottom, and that the plaintiff did know all these things, and did put the dynamite blast in the hole, knowing all about its condition, that he thereby assumed all the risks of the consequences and could not recover, and directed a verdict for the defendant, he would have been in exact conformity with the law, as we understand it. But he left to the jury the question whether, if "Diehl did not know, and had not the means of knowing, that dynamite would explode by being put in a heated place, such as the bottom of this hole evidently was, and that the defendant's superintendent urged the use of the dynamite just in that way, knowing how hot the place was, and knowing that the holes were to be bored down into the hot mass, and insisted on the dynamite being used, and the superintendent ought to have known, considering the circumstances,—that is, the business he was performing there as manager,—if he ought to have known that it was unsafe, and he still urged and insisted upon the use of the dynamite, then it might be said that he provided and directed the use of a means which was dangerous, and, injury ensuing to the workman, if it is found that the workman was not to blame, then there may be a recovery." In leaving this question to the jury, and in that way, we think there was error; first, because it was proved by the plaintiff himself that he had been using dynamite for a number of blasts and during several days before this particular blast was put off, and therefore could not be said to be ignorant of its explosive quality under the influence of heat; and, secondly, because there was no evidence that the superintendent had knowledge of this particular hole, or the condition it was in, or that he had given any direction to put the dynamite either in that hole, or in any hole presenting similar conditions. These are matters as to which the plaintiff assumed all the risks, and upon the clearest authority he alone assumed the entire responsibility of putting off the blast in the exact conditions existing at the time.

In Green St. Ry. Co. v. Bresmer, 97 Pa. 103, we said: "A servant, however, assumes the risk naturally and reasonably incident to his employment. He is not bound to risk his safety

in the service of his master, and may, if he thinks fit, decline any service in which he reasonably apprehends injury to himself. . . . . No duty was imposed on the company to inform him of what he so well knew, nor to forbid his grooming the mare. He voluntarily assumed the risk, and continued to expose himself to a well-known danger. He cannot now cast on his employer a liability for the injury which he thereby suffered. It matters not that the master did know the vicious habits of the mare. It is the knowledge of the servant which withholds from him a right of action." In Sykes v. Packer, 99 Pa. 465, we said : " An employer does not impliedly guarantee the absolute safety of his employee. In accepting an employment, the latter is assumed to have notice of all patent risks incident thereto, of which he is informed or of which it is his duty to inform himself: Wharton on Neg., § 206. When, therefore, he undertakes hazardous duties, he assumes such risks as are incident to their discharge from causes open and obvious, the dangerous character of which causes he has had the opportunity to ascertain." In Phila. etc. R. Co. v. Hughes, 119 Pa. 301, we held that if a person specially undertakes to perform a peculiarly perilous employment, by operating knowingly and voluntarily a machine obviously wanting in appliances suitable for safety, he cannot thereafter be heard to charge that the machinery was of a dangerous kind, and wanting in such appliances. Citations need not be enlarged. The principle is very familiar. Other instances of its application will be found in Beittenmiller v. Brewing Co., 22 W. N. 33 ; Mansfield Co. v. McEnery, 91 Pa. 185 ; New York R. Co. v. Lyons, 119 Pa. 324, and in many other cases.

On the subject of the plaintiff's knowledge of the danger, his own testimony furnishes full information. He was asked about his blasting with dynamite in this furnace before the blast that injured him, and said substantially that he commenced work on the Sunday before the Saturday on which the accident happened, and worked on the night shift, and had put off several blasts. " Q. You set them off on the night before that, and that would be on the 18th? A. Yes. Q. How many blasts did you make that night, do you suppose? A. I could not tell. Q. How many did you usually set off in a night? A. Sometimes two or three. . . . . Q. Did you blast with dyna-

mite when you blasted? A. Yes. Q. All the blasting you did
in November, 1887, was done with dynamite? A. Yes; all
the blasting, as far as I know. . . . . Q. I say all the blasting
done by the night shift in November, 1887, at the time this
furnace was being cleaned out, was done by you? A. I done
it until I got hurt." He then described the process of blasting
with dynamite, and said that it was exploded by means of a
cap connected with a fuse. " Q. You light the end of the
fuse? A. Yes. Q. And the fuse, I suppose, contains pow-
der? A. Yes. Q. Black powder? A. Yes. Q. And when
it is lighted it burns down to the cap? A. It gets to the
cap. Q. And anything that will of course explode the cap
will explode the dynamite? A. Yes. Q. When this hole
was prepared this day for the blast, you saw that it was very
hot? A. I saw that it was hot; yes. Q. The drilling in it
had made the drill red-hot, had it not? A. Well, a little;
yes, in the bottom." He further testified that the place where
the hole was to be put down in the mass was so hot that
boards had to be placed on it, so they could stand on the
boards. " Q. Of course you saw and knew that it was in this
condition? A. I knew that it was in that condition not to
use powder in it." Being recalled for cross-examination he
was asked: " Q. And you knew that the work you were en-
gaged in was a dangerous work? A. Well, in one sense of
the word, yes. Q. You saw, of course, as you went down,
that this place was very hot? A. Yes; I done as I was told.
Q. And it got hotter and hotter, and you knew that you were
blasting in a material that was hot? A. Yes." He also testi-
fied that he put the charge of dynamite in the hole, and that
it instantly exploded. The plaintiff's witness, Jesse Ochs,
also testified to the dangerous character of blasting with dyna-
mite in a red-hot substance. " Q. Do you consider the use of
dynamite in a red-hot substance, like salamander, dangerous?
A. I do. If it was not dangerous we would not use it; if it
was not a dangerous explosive we wouldn't need it, wouldn't
use it. It has got to be a dangerous explosive, or we could
not do the execution with it that we want."

It will be observed, therefore, that the dangerous character
of the work was fully established by the plaintiff's testimony;
also that he voluntarily engaged in it; that he had ample op-

portunity to become acquainted with the highly explosive character of the dynamite he was using, and that he put the charge, with his own hands, in a hole that was in a state of intense and dangerous heat. We do not see upon what principle he can be relieved from the consequences of his own voluntary action. Even if he had had orders to put the blast off, in the hole in the condition in which it was, he was under no obligation to obey such orders; but he had none. The superintendent was not there, and knew nothing about the condition of the hole; but the plaintiff knew all about it, and knew the dangerous character of the work. Upon all reason and authority, he was bound by the consequences of his own act and cannot recover. The defendant's first point should have been affirmed.

Judgment reversed.