THE PITTSTON COAL CO. v. JOHN McNULTY.

ERROR TO THE COURT OF COMMON PLEAS OF LUZERNE
COUNTY.

Argued April 12, 1888—Decided May 21, 1888.

When, in an action by an employee to recover damages for injuries result-
ing, as alleged, from specified defects in an instrument furnished by
his employer for use, though there be proof that the injury was caused
by the instrument, yet if there be no evidence that the injury was proxi-
mately the result of the defects complained of, it is error to submit the
case to the jury.

Before GORDON, C. J., PAXSON, GREEN, CLARK and WIL-
LIAMS, JJ.; TRUNKEY and STERRETT, JJ., absent.

No. 208 January Term 1888, Sup. Ct.; court below, No. 168
February Term 1884, C. P.

On February 1, 1884, an action in case for negligence was
begun by John McNulty, by his next friend and father, Martin
McNulty, against The Pittston Coal Co., to recover damages
for injuries alleged to have been caused by the negligence of
the defendant.

At the trial on December 12, 1887, it was made to appear
that on September 27, 1883, John McNulty, a lad of twelve
years who for some time had been in the employ of the Pitts-
ton Coal Co., in the work of oiling the machinery of the
breaker, was sent by the outside-boss, at the request of the min-
ing-boss, into the mine to act as a driver, because of a scarcity
of employees that day off on an excursion. The lad was fur-
nished with a mule by the driver-boss and put to work drawing
loaded cars from a heading out over a side track upon the main
track on which the loaded cars were run down to the foot of
the slope, to be hoisted into the breaker. The mule was at-
tached to the car by an extension of the trace chains to a cross-
piece called a stretcher, or spreader, about two feet and a half
behind which was a hook to connect with the car. As the
loaded car on the side track approached the main track, it

would run slowly, of its own weight towards and upon the main track and thence down the main track to the loaded cars which had preceded it. The mule would be detached from the car at the junction or near it, turned off the track, and the car allowed to move on down.

The plaintiff testified, in substance, that when he had brought his last car out upon the main track, in the evening, he reached over to detach the mule by lifting the hook as the car was slowly moving of its own weight, when the mule suddenly started and tightened the stretcher so that it struck him on the breast and threw him beneath the car where four fingers were crushed from his left hand; he was alone at the moment the accident occurred, and was not acquainted with the mule's propensities. The plaintiff's counsel then offered to prove by a witness who had frequently driven the mule in the mine, that he was a mule that would jerk, kick, run away; that he was vicious, and had a bad reputation generally among the boys in the mine. This was objected to as being irrelevant, for the reason that it had not been established that the accident occurred through the viciousness or evil propensities of the mule, and the offer did not propose to show notice to the owners of the alleged character of the mule.

By the court: We will admit testimony as to the witness's knowledge of the character of the mule.

Under this offer the plaintiff called a number of witnesses who testified from observation and experience that the mule would sometimes bite and kick, and that when he was to be attached to a car it was often necessary that another boy should hold him at the head, otherwise he would run away, to be afterwards caught with difficulty at a door or elsewhere.

At the close of the plaintiff's case, a motion for a compulsory nonsuit was denied, when the defendant introduced testimony to the effect, inter alia, that of the eighteen or twenty mules in the mine, in the care of the driver-boss, the most of them would run off, or attempt it, when being hitched to the car, unless they were held at the head; and that this mule had been used in the mines for several years and no complaint had been made against him. Testimony was also introduced from which it was claimed that the plaintiff was improperly riding upon the bumper of the car, and fell therefrom when he was

injured, and that he had been warned against so riding as dangerous.

The court, RICE, P. J., charged the jury and answered the points presented as follows:

Now, what is the negligence complained of? We may remark before stating the answer to that question, that the cause of action here is not that the plaintiff was taken from the work in which he was engaged and put at more hazardous work; that is not the ground upon which the plaintiff claims to recover; nor could he recover upon that ground, under the testimony in this case. So that this testimony with regard to what was said between the mother and Mr. Hennigan and Mr. Tench, a short time before the accident, and the testimony as to what was said to the boy at the time he went down into the mine, is not very material in the disposition of the question which has been raised. He alleges that being employed in the mine to drive the mule which was used for hauling coal out of the workings, the company was bound to furnish him with reasonably safe appliances and instrumentalities for that purpose, and that in this particular case the company was bound to furnish him with a reasonably safe mule. It is claimed that the company was negligent in not furnishing him with a proper and suitable animal for the purpose of the work in which he was engaged. That is the allegation of the plaintiff, and to that allegation the testimony has been directed; and to the consideration of the testimony as it bears upon that allegation you will direct your attention.

We may say to you, in the first place, that the employer does not warrant the safety of his employees. The law does not impose such an obligation as that upon an employer. It would be impossible for an employer to warrant that his employees should be absolutely safe and free from danger. It does, however, impose upon the employer an obligation which has been thus stated, and an obligation which we think existed in this case. "A master does not warrant his servant's safety; he, however, is under an implied contract with those whom he employs, to adopt and maintain suitable instruments and means with which to carry on the business in which they are employed." Now, that being the nature of the obligation of the defendant to the plaintiff, the question is, whether the de-

fendant failed in the performance of that duty.    In determining whether or not the appliance or instrumentality or, in this case, the animal, is reasonably safe, you are to take into consideration the nature of the employment.    You are also to take into consideration the nature of the appliance or instrumentality.    In other words, the law does not say that the employer shall furnish to his employees a machine, an instrument, an appliance or an animal, in the use of which he shall be entirely free from danger.    That would be impossible from the very nature of the case.    For example: if a man is employed to run a locomotive engine, which is a dangerous agency, in undertaking that work he assumes the risks which are ordinarily incident to the use of such an agency.    A man employed about a sawmill is employed about a dangerous agency; no human skill or care or diligence will make such a place absolutely safe. So in the use of the mules in the mines.    We may say that they are notoriously used there for the purpose for which this mule was used.    We think it entirely safe to say that they are necessary for the purpose of hauling out the coal from the workings to the shaft or slope; and in considering whether or not the employer has performed his duty towards his employee, it is not for the jury to say that some other animal might have been safer than the mule, and therefore that the employer was guilty of negligence in using the mule instead of using some more tractable animal.    In determining whether or not this was a reasonably safe instrumentality you are to take into consideration the nature of the work which was to be done and the nature of the instrument which is ordinarily employed for that purpose, and, hence, any peculiarities which are incident to the mule as distinguished from other animals. But it is claimed, further, upon the part of the plaintiff, that this mule was a vicious mule; and that it was by reason of his vicious nature that this accident occurred.    Upon this question of fact there is a discrepancy, if not a conflict, in the evidence, which you must determine as best you can, bearing in mind that in this case, as in all other civil cases between man and man, you are to decide in accordance with the credible testimony in the cause.    You are to take into consideration what were the opportunities of these various witnesses for knowing what were the habits and character of this animal,

and what is the distinctness of their recollection. If any interest has been manifested in their testimony or appeared in the other testimony in the case, which would cause them to vary from the truth, you are to take that into consideration, also, in weighing their testimony. But in case you should find as matter of fact that the mule was a vicious mule in certain particulars, you are to inquire further whether or not the accident was the consequence of the mule's viciousness in any particular. Some of the witnesses on the part of the plaintiff have testified that the mule would bite, kick and run away. I think it entirely safe to say that the mule's habits as to biting and kicking are not involved in this case ; because it is not alleged by any testimony that the injury came to the plaintiff by reason of the mule's viciousness in these respects. It is claimed, however, that the mule was in the habit of running away. In case you should find that to be a fact, then you will inquire still further whether or not the accident was the result of that propensity or habit of the mule. It is proper at this point to call your attention to the question of the plaintiff's contributing in any way to the accident complained of. . . . . But in case you should find, under our instructions, that the plaintiff was not in any degree guilty of contributory negligence, then you will recur to the question which I stated a few moments ago, namely, was the accident the result of any vicious habit which it is shown the animal had at that time? If you find as a matter of fact that it was merely the result of a starting up which an ordinarily safe and tractable animal might make under the circumstances, then we think that the accident would not be traced to the vicious habits of the animal and therefore would not be imputable to any negligence upon the part of the company. If, however, you find from the testimony that it was the result of an attempt of the mule to run away, and that this was the habit and had been the habit of the mule for some time previous to that, then this was not such an animal as the defendants were bound to furnish to the plaintiff in and about his work, and they may be held liable for the consequences which resulted therefrom. . .

Defendant's counsel request us to charge you :

1. That the evidence in this case fails to establish the right of the plaintiff to recover, and the jury should find for the defendant.

Answer : We decline to charge as requested in that point, because we think that there are questions of fact which should be submitted to you and which should not be decided by the court.[1]

3. That if the jury believe from the evidence that the injury alluded to was not occasioned by the viciousness of the mule plaintiff was driving, the verdict must be for the defendant.

Answer : This point is affirmed.

4. That if the jury believe the injury complained of was occasioned by the negligence of the mining-boss in sending the boy into the mine, or of the driver-boss in giving him the mule he was driving, the verdict must be for the defendant.

Answer : We decline to charge as requested in that point.

5. There being no evidence in the case to show that the defendants had notice or knew of any defect in the character of the mule given to McNulty, the verdict must be for the defendant.

Answer : We decline to charge as requested in that point.

The verdict of the jury was in favor of the plaintiff for $500. Judgment being entered, the defendant took this writ, assigning as error:

1. The refusal of defendant's first point.[1]

*Mr. George S. Ferris* and *Mr. Henry W. Palmer*, for the plaintiff in error:

It is submitted that the jury should have been directed to find for the defendant, because :

1. There was no evidence whatever that, at the time this mule was put into the mine, he had any vicious traits.   There being no proof to the contrary, the presumption arose that he was at that time a suitable animal of his kind, and with reasonable care could be used by an employee without danger : Grimont v. Hartman, 17 W. N. 252 ; 2 Thompson on Neg., § 48, p. 1053 ; Wharton on Neg., § 245.   It is not negligence in the master if the tool or machine breaks, whether from an internal original fault, not apparent when the tool or machine was provided, or from an external apparent one, produced by time and use, not brought to the master's knowledge : SHARS-

WOOD, J., in Baker v. Railroad Co., 95 Pa., 215, citing: Ryan v. Railroad Co., 23 Pa. 384; Mansfield Coal & Coke Co. v. McEnery, 91 Pa. 185.

2. There was a notable absence of any testimony in denial of positive testimony showing that this mule was of an ordinary character and such as could with reasonable care be used without danger to an employee, and that he was so used without complaint for three years. And the furnishing of such an appliance, though better might be known, is all that can be required of an employer, the limit of his responsibility, the sum total of his duty: Payne v. Reese, 100 Pa. 301; P. & C. R. Co. v. Sentmeyer, 92 Pa. 276; Allison Mfg. Co. v. McCormick, 118 Pa. 519.

3. There was no evidence whatever that the plaintiff's injury resulted directly, or even remotely, from any viciousness of the mule. The facts shown by the plaintiff himself are more consistent with the absence than with the existence of viciousness on the part of the mule, and more consistent with the absence than with the existence of negligence on the part of the defendant. In other words, there was not a scintilla of evidence that the injury resulted from any negligence on the part of the defendant: Cotton v. Wood, 8 C. B., N. S., 568; Baulec v. Railroad Co., 59 N. Y. 356; Hayes v. Railway Co., 97 N. Y. 259; West Mahanoy Tp. v. Watson, 116 Pa. 344; P. & R. R. Co. v. Schertle, 97 Pa. 450; Baker v. Fehr, 97 Pa. 70; Goshorn v. Smith, 92 Pa. 435; Allison Mfg. Co. v. McCormick, 118 Pa. 519; Barnes v. Sowden, 119 Pa. 53; Howard Exp. Co. v. Wile, 64 Pa. 201.

4. There was no evidence that the defendant company had delegated to any subordinate agent the duty of furnishing mine supplies, machinery, mules, or other appliances, for the use of employees. The mule in question was furnished to the plaintiff by the driver-boss, and if there was any negligence it was his act, and therefore the act of a fellow-servant: Lehigh V. R. Co. v. Jones, 86 Pa. 433.

5. Even, therefore, if this mule had been vicious, and if the injury had resulted from his viciousness, the negligence (apart from that of the plaintiff) which was the proximate cause of the injury, was the negligence of the mine-boss and the driver-boss, in permitting him to drive this particular mule. They

were the fellow-servants of the plaintiff, and for their negligence the common employer is not answerable: Lehigh V. Coal Co. v. Jones, 86 Pa. 432; Waddell v. Simoson, 112 Pa. 567; Reese v. Biddle, 112 Pa. 72; Del. & H. Canal Co. v. Carroll, 89 Pa. 374; N. Y., L. E. & W. R. Co. v. Bell, 112 Pa. 400; Redstone Coke Co. v. Roby, 115 Pa. 365; § 8, act of March 3, 1870, P. L. 6.

*Mr. Edward Shortz* and *Mr. Edward A. Lynch*, for the defendant in error:

1. If the authorities had knowledge of the defect, or from lapse of time they ought to have had such knowledge by the exercise of reasonable diligence, it was immaterial whether the plaintiff gave them notice or not: Nanticoke Bor. v. Warne, 106 Pa. 376; McLaughlin v. Corry, 77 Pa. 113; P. & R. R. Co. v. Hughes, 119 Pa. 301; Patterson v. Railroad Co., 76 Pa. 389. Notice by the plaintiff, in this instance, was out of the question, as the first knowledge he had of the viciousness of the mule was the time when he received his injuries.

2. The question of proximate cause, where the facts are disputed, is for the jury; where they are undisputed, the court may determine it: West Mahanoy Tp. v. Watson, 112 Pa. 574; Hoag v. Railroad Co., 85 Pa. 293; Pass. Ry. Co. v. Trich, 117 Pa. 390; Burrell Tp. v. Uncapher, 117 Pa. 353.

3. If a master subjects his servant to dangers such as he ought to provide against, he is liable for any accident resulting therefrom. The servant's primary duty is obedience, and if in the discharge of his duties he is damaged through the negligence of the master, the latter is liable. The master is bound to furnish and maintain suitable instrumentalities for the duties required, and if he does not, he is liable for a resulting accident. These principles are elemental and fundamental, and are everywhere recognized. They "grow out of the necessities of the relation of master and servant and are encouraged and sustained by public policy:" P. W. & B. R. Co. v. Keenan, 103 Pa. 124: Rummell v. Dilworth, 111 Pa. 343; Patterson v. Railroad Co., 76 Pa. 389: Lewis v. Seifert, 116 Pa. 628.

4. The question of contributory negligence is to be determined by reference to the age, intelligence and physical

strength of the person injured, and the circumstances under which the injury was sustained, and by applying to his conduct the same standard the jury would, in judging boys of like age, strength and intelligence: Oakland Ry. Co. v. Fielding, 48 Pa. 320; Crissey v. Railway Co., 75 Pa. 86.

5. The legislature has imposed upon the mining-boss quite as many grave and important duties as one frail mortal can reasonably be expected to faithfully discharge, and if to these the Pittston Coal Company, as appears by the testimony of its superintendent, saw fit to add others, such addition became the act, not of the legislature but of the company. If to this mining-boss was delegated the duty of providing for the company's employees reasonably safe instruments with which to work, he, in the language of Lewis v. Seifert, 116 Pa. 628, "stood in the place of his principal, and the latter is responsible for the acts of such agent."

OPINION MR. JUSTICE CLARK:

The plaintiff in this case, on the 27th of September, 1883, was, and for some time prior to that had been, an employee of the Pittston Coal Company. He was at that time a lad of twelve or thirteen years of age, and was employed to oil the machinery in the breaker. On the day mentioned, however, he was temporarily sent into the mines, to serve as a driver, in which capacity it was his duty to hitch a mule to loaded cars at the heading, and drive the mule on a side track a mile or more to the main or loaded track at the foot of the slope, where the mule was detached from the car and hitched to an empty one, which was hauled over the same route to the heading. The grade of the side track for fifteen or twenty yards from the place of its connection with the loaded track, as well as the grade of the loaded track, for some distance from the same point, was sufficient for the loaded cars to run slowly, by gravity, towards the foot of the slope. What is called a "stretcher" was used in hitching the mule to the car, and as the car came upon the loaded track, and approached the loaded cars standing thereon, it was the duty of the driver to stop the mule, detach the stretcher, and allow the animal to step off the track and out of the way of the moving car, in order that it might drop down the grade in the rear of the others.

The lad, McNulty, was delivering his sixth car on the loaded track; as he approached the point where he was to unhitch, he stopped the mule and attempted to detach the stretcher. But the mule "started out again," the stretcher struck the boy on the breast, threw him on the track in front of the car and the front wheel severed four of the fingers from his left hand. The car stopped and the mule stood still, whilst the boy by the aid of others was extricated from this perilous place. This suit is brought against the company to recover damages for the injury thus received, upon the ground that the mule was unsafe and unsuitable for the purposes for which he was used; that he was a vicious and intractable animal, would bite, kick, and run away; that his vicious habits were well known to the company, and that the company was negligent in permitting him to be used in the mine. The plaintiff's contention is, that the company was bound to furnish the boy with a mule that was reasonably safe; that the boy accepted only the ordinary risks of the business, and that he was wholly ignorant of the vicious character of the animal he had in charge.

Assuming all this to be so, the difficulty in the plaintiff's case is that the injury does not appear to have occurred from any vicious habit or conduct of the mule. From all that has been shown, it appears that when the boy reached down to detach the stretcher, the mule "started out again," and in consequence of this, and this only, the injury occurred. The occurrence is thus stated by the plaintiff himself:—

Q. You were bringing out the sixth car you say? A. Yes, sir, coming out with the sixth car, the loaded track was full, and I hollered "whoa" to the mule when I thought it was fit to unhitch, to get her out of the road. Q. What do you mean by fit to unhitch? A. Why, to get the mule out of the road. Q. To get the mule out of the road before the mule ran against the last loaded car—is that it? A. Yes, sir; then he stopped and I bent over for the stretcher and he started out again, and the stretcher come up like that (illustrating) and catched me in the breast, knocked me across the stretcher and that is all I know about it.

There is no pretence that the mule attempted to bite, or to kick the boy, and there is no evidence that he tried to run away. The car was moving slowly down the grade by its own

gravity, and this alone may have caused the mule to "start out again;" almost any horse or mule, however gentle and well broken, might start unbidden under such circumstances. The mule had been trained promptly to step out from the front of the car at this point, and it is quite reasonable to suppose that in starting out, he did what he conceived to be his duty. The boy was but a novice in the business, and may not have been as prompt as one more accustomed to the work. That the mule was not guilty of any vicious act, is shown by the admitted facts in the case. When the lad fell in over the stretcher his light went out, he cried "whoa" and the mule stopped; he was lying partly on and partly under the stretcher in front of the car, on the track, with his hand under the wheel. He was certainly in a place of the greatest peril, for the mule might have kicked him, or, by moving a single step forward, might have dragged the car over him. But the mule did not kick him, nor did he stir from the spot, until a light was obtained, a lever applied to the wheel, and the boy rescued from danger.

The action is by an employee against his employer; the gist of the action is negligence, and the burden of proof rests upon the plaintiff to prove that the negligence of the defendant was the proximate cause of the injury. Upon an examination of the whole case, we fail to find the slightest evidence that the injury complained of resulted from any vicious habit or conduct of this mule. We are not to assume that when he "started out again," he started to run away; the testimony is wholly to the contrary.

We find nothing in the evidence to justify a submission of the case to the jury, and therefore,

The judgment is reversed.