## Mensch, Appellant, *v.* Pa. R. R. Co.

[Marked to be reported.]

*Risk of employment—Negligence—Evidence—Presumption—Master and servant—Fellow-servant.*

In an action by an employee against his employer, in the absence of definite proof of some negligence which directly or naturally results in injury to the employee, the accident is regarded as one of the hazards of the employment of which the servant takes the risk and for which there can be no recovery.

While a railroad company employer is bound to furnish its employees with ordinarily safe tools and machinery, the mere fact that a car which was the cause of the employee's injury was in an unsafe and dangerous condition is not prima facie evidence of negligence on the part of the employer. To warrant a jury in finding negligence the evidence should show that the employer had previous knowledge of the condition of the car or ought to have had such knowledge, and failed to repair the defect within a reasonable time.

To warrant an inference of negligence on the part of the employer, there must be proof of the existence of the defect at some time prior to the accident or of a failure to properly inspect. Where the evidence showed that, about a week before the accident, the car was taken out of a yard where there was a thorough system of inspection and none of the train hands afterwards saw the defect prior to the accident, the jury cannot be permitted to find that defendant ought to have had knowledge of the defect.

Any defect which may become apparent in tools or machinery it is the duty of the servant to observe and report to his employer, and the employer is not liable to an employee for the negligence of a fellow-servant in the same employment.

Argued April 18, 1892. Appeal, No. 63, Jan. T., 1892, by plaintiff, George E. Mensch, from judgment of C. P. Centre

Co., Jan. T., 1890, No. 28, on verdict for defendant.   Before
Paxson, C. J., Green, Williams, Mitchell and Hey-
drick, JJ.

Trespass by employee for injury caused by defect in car.

The material facts as they appeared at the trial before
Furst, P. J., are stated in the opinion of the Supreme Court.
Plaintiff was a brakeman and the injury was caused by a pro-
jecting bolt, fully described in the evidence quoted in the
opinion.

After plaintiff's evidence was in, defendant moved for a non-
suit, which being refused, D. R. Jacoby, the general yard mas-
ter of defendant's yards at Sunbury, was called and testified,
by reference to a book and slip, containing the record of in-
coming and out-going trains, that the car which caused the ac-
cident arrived at the Sunbury yards Nov. 26, 1887, and left
Nov. 28 ; that cars were inspected every day they remained in
the yard.   Other witnesses testified to the thorough character
of the inspection, but not of this particular car.

Plaintiff moved to strike out the testimony of Jacoby, and
[defendant, under objection and exception, gave in evidence
the book and slip containing the record of the trains.] [1]
To lay the ground for this evidence the witness testified that
the record was made by the clerks in the office, who took the
numbers passing along the track, that the clerks who made
them were still in the office, and that the records were kept
there on file under the control of the witness.

The court charged the jury as follows, inter alia :

" Therefore, it not appearing that the railroad company em-
ployed insufficient or incompetent inspectors or that it had any
knowledge of their incompetency, and it appearing that this
car went through the yard at Sunbury immediately prior to
the conveyance of the load of coal to Pleasant Gap, we say to
you that there is no evidence in this case affecting the defend-
ant with any knowledge of the particular defect in this car on
Dec. 5, 1887 . . . . and, having this view of the case, we are
compelled to say to you that the verdict must be for the de-
fendant." [2]

Verdict and judgment for defendant.   Plaintiff appealed.

*Errors assigned* were, (1) ruling on evidence, quoting the

evidence but not the bill of exception; (2) instructions, quoting them ; and (3) directing verdict for defendant.

*John H. Orvis*, with him *C. M. Bower* and *Ellis L. Orvis*, for appellant.—The company's books were not evidence : 1 Gr. Ev., § 1, 493; Com. v. Woelper, 3 S. & R. 28; Thomas v. Wright, 9 S. & R. 87; Spalding v. Saxton, 6 Watts, 338; without due proof of the entries : Stoever v. Whitman, 6 Bin. 416 ; Com. v. Switzer, 134 Pa. 383.

It being the duty of defendant to furnish cars in a safe condition, the dangerous condition of the car at the time of the accident is prima facie evidence of negligence, and if unexplained would require a jury to find negligence.   Where a railroad car is defective, the burden of disproving negligence is on the company : Empire Co. v. Wamsutta Co., 63 Pa. 14; Leech v. The Miner, 1 Phila. 144.   Intemperate habits of conductor raises presumption of negligence until rebutted : Pa. R. R. v. Books, 57 Pa. 339.   Alterations of appliances after accident, are admissible : R. R. v. McElwee, 67 Pa. 311 ; McKee v. Bidwell, 74 Pa. 218.   If there is evidence from which negligence may be inferred it is for the jury : Neslie v. R. R., 113 Pa. 300; Craven v. R. R., 46 Leg. Int. 108; no matter how strong the countervailing proof : R. R. v. Foxley, 107 Pa. 537.

Where a railroad company ought to know of a defect, it is negligence not to know and remedy it: Bier v. Standard Mfg. Co., 130 Pa. 446.   A railroad company owes its employees the duty of regular inspection of cars : R. R. v. Huber, 128 Pa. 63.   This car remained at Pleasant Gap siding over a week, and, from the theory of defendant's own witnesses, this defect must have existed for that length of time.   It was not a latent defect, but could have been discovered by even a casual inspection.   No evidence was offered as to inspection on this branch road.   Whether provision as to inspection is reasonable and adequate is for the jury under the facts of each case : R. R. v. Hughes, 119 Pa. 315.   It will not do to say that the failure to inspect would be the negligence of a fellow-workman for which the company would not be liable, under R. R. v. Hughes, 119 Pa. 315.   There was no evidence that any car inspector had been negligent, and negligence of a fellow-servant is never presumed.   The doctrine that a workman assumes the

risk of the negligence of fellow-workmen was pushed to the outer verge in Canal Co. v. Carroll, 89 Pa. 374. The interests of all parties demand that the rule be not extended.

*John Blanchard, E. M. Blanchard* with him, for appellee.— Testimony of teller as to entries on bank-scratcher, whether made by him or not, are evidence: Henry v. Oves, 4 Watts 46. Where one knows a writing to be genuine, and his mind is so convinced that he is on that ground enabled to swear positively to the fact, it is evidence, although the writing may not be known or the memory refreshed: 1 Gr. Ev. § 437. A car record was admitted in Huckstein v. Jolly, 42 Leg. Int. 321, although not made by the witness. Besides, there was independent testimony of other witnesses as to the inspection, etc.

A servant takes the risk of defects in machinery produced by time, not brought to the master's knowledge: Baker v. Allegheny Val. R. R., 95 Pa. 215; Augerstein v. Jones, 139 Pa. 189. It is the servant's duty to report defects to the master: R. R. v. Hughes, 119 Pa. 312, 314; Patterson v. R. R., 76 Pa. 389. That the materials were in fact defective does not tend even prima facie to establish negligence: Wood, Master & Servant, § 382. The fact of breakage is as consistent with care as with negligence. It cannot, therefore, be evidence of negligence: R. R. v. Hughes, 119 Pa. 312. A railroad company is bound to use such machinery only as is reasonably safe and in common use: R. R. v. Hughes, 119 Pa. 301; Sykes v. Packer, 99 Pa. 465; Allison Mfg. Co. v. McCormick, 118 Pa. 519; Mullin v. Steamship Co., 78 Pa. 25; Titus v. R. R., 136 Pa. 618.

The trainmen are inspectors en route. If they fail in their duty, their negligence is not imputable to the company: Pa. R. R. v. Hughes, 119 Pa. 301; Baker v. R. R., 95 Pa. 211. They and car-inspectors are fellow-servants: Lehigh Valley Coal Co. v. Jones, 86 Pa. 432; Tube Works v. Bedell, 96 Pa. 175; R. R. Co. v. Bell, 112 Pa. 400; Campbell v. R. R., 17 W. N. 73.

In the absence of proof to the contrary, the presumption is that the system of inspection is sufficient, also that sufficient time had not elapsed to convey notice of the defect. Even plaintiff's evidence shows that the necessary inspection by the trainmen was made.

Even accepting plaintiff's contention, and the evidence would at best be a mere scintilla, and that is not sufficient to carry the case to the jury: Ryder v. Campbell, L. R. 40 Ex. 34; Howard Exp. Co. v. Wile, 64 Pa. 201; Cunningham v. Smith, 70 Pa. 450; R. R. v. Yerger, 73 Pa. 121; Ins. Co. v. Laury, 84 Pa. 43; Hyatt v. Johnston, 91 Pa. 196; Cover v. Manaway, 115 Pa. 338.

The cases cited by appellant, on the burden of disproving negligence, are passenger cases.

Opinion by Mr. Justice Green, October 3, 1892.

The plaintiff, while in the strict performance of his duty, was grievously injured without any fault of his own, and the cause of his injury was a defect in one of defendant's cars. This defect was unknown to him and he had no sufficient opportunity to discover it prior to the accident. If the principles of law applicable to the facts of the case will permit a recovery, the plaintiff is undoubtedly entitled to recover compensation for his injury. The very able counsel for the appellant with much frankness concedes that inasmuch as the plaintiff was an employee of the defendant, the mere fact of his injury raises no presumption of negligence on the part of the defendant, and further that the plaintiff must prove affirmatively the negligence of the defendant, and that, in the absence of such proof, it is the duty of the court to take the case from the jury and direct a verdict for the defendant. The contention of the learned counsel is that where there is any proof of negligence, more than a scintilla, the question becomes a question of fact for the jury, and that, in the present case, the proof being that the car numbered 9820 was in an unsafe and dangerous condition which caused the plaintiff's injury, a prima facie case of negligence was made out which required the trial court to submit the question to the jury.

It is not to be doubted that the plaintiff's injury was caused by a projecting iron rod, which extended several inches beyond its proper position at the end of the car, and it must be conceded that the plaintiff had no knowledge of its presence and no opportunity to discover it. He was a brakeman and it was his duty to couple the car in question to another car, and it was dark when he undertook to perform this duty. There is

no evidence that he knew of the condition of the car or that he was in the least degree derelict or careless in the performance of his duty.

If the defendant had previous knowledge of the condition of the car, or ought to have had such knowledge, and failed to repair the defect within a reasonable time, it would be guilty of negligence and the plaintiff would be entitled to recover. It is not claimed by the appellant that there is any evidence in the case showing that the defendant had actual knowledge of the defect at any time prior to the accident, but the contention is that under all the evidence the defendant ought to have had such knowledge and is therefore liable. This contention renders it necessary to examine the evidence with care in order to determine whether it is such as to warrant an inference of prior knowledge by the jury. If there was such evidence the case should have been given to the jury; if there was not, the court below was right in withdrawing it from the jury.

The accident occurred on the evening of the 5th of December, 1887. Milton Wolf, a witness examined by the plaintiff, testified that he was a brakeman on the defendant's road and that, about a week before the accident, the car in question, No. 9820, was brought by himself and others from Sunbury to Pleasant Gap, loaded with hard coal, and that the car so loaded was put on the siding at Pleasant Gap. He further said that he did not know when it was taken out of the Pleasant Gap siding, and that the next time he saw it was when it was taken out of Logan siding loaded with ore. This was on the day of the accident and he assisted as brakeman and was on the train when Mensch was injured. He did not examine the car until the next morning and then he discovered the projecting bolt with such marks on it as indicated that it had inflicted the injury. This appears to be the whole of his knowledge respecting the bolt.

L. A. Troxell, a witness for the plaintiff, testified that he was conductor of the defendant's freight train running between Sunbury and Bellefonte, and that, on the evening of December 5, 1887, they stopped at Logan station to take on three cars of which this, No. 9820, was one; that while they were engaged in taking on the cars the accident occurred, though he did not see it, but did see Mensch immediately after it hap-

pened. He also said he examined the car the next day and found the bolt with marks on it tending to show that it was the cause of the injury. He described the condition of the rod saying : " I found the rod running from the end sill to the cross-tie head of the drop-bottom had worked out through the cross-tie and stuck out of the end sill, I judge six or seven inches, as near as I can tell without measurement; apparently the nut had either worked off or been broken off; there was a thread on the rear end which had worked through the cross-tie and dropped below the hole so it was sticking out of the end sill." This was the only knowledge of the witness as to the rod and its condition.

Z. Underwood, examined by plaintiff, testified that he was rear brakeman on the freight train and assisted in taking on three ore cars at Logan ore siding on the night in question. He heard the plaintiff call out and saw his light go over the bank and went to him and found him with the injury inflicted. He described all that he saw of the occurrence and the removal of the plaintiff to the doctor's office. He saw the bolt or rod that evening and described it fully, substantially the same as the other witnesses. He also said that he had seen the car that morning when they brought it out from Pleasant Gap. He was asked: " Q. When you passed it did you see this rod that morning? A. No, sir, I didn't. Q. Were you on the train that brought this car up from Sunbury? A. Yes, sir; I was on from where we passed local; I had traded off that time and I saw the car put in at Pleasant Gap. Q. State if you noticed this rod at that time? A. No, sir, I didn't." He testified at considerable length as to the movement of the cars and the occurrence of the accident but gave no further testimony as to any previous knowledge of the condition of the bolt.

The plaintiff testified that he was a brakeman on the train, that it was his duty to couple the rear cars and that while he was doing so he was struck and injured. He also said he saw nothing of the projecting bolt.

J. T. Cherry, examined for plaintiff, testified that he was freight engineer and was acting as such on the train when the accident occurred. On the next morning he examined the car to see what had caused the injury and discovered the project-

ing bolt which he described as the others had done. He gave no testimony as to any previous knowledge of the condition of the bolt.

Saintclair, the flagman, was also examined by the plaintiff but he did not see the occurrence of the accident. He said he examined the car the next morning and found the projecting bolt, but he gave no testimony as to any previous knowledge of its condition.

These were all the persons who were working the train and none of them testifies to the slightest knowledge of the projecting bolt at any moment prior to the accident. They are the persons who naturally would first discover such a defect of the car. It was conspicuous and was found at once after the accident. The testimony of the men was that the bolt projected because the nut which held the opposite end of the bolt had worked off or been knocked off, and thus the end of the bolt had worked its way through the sill until in dropped down on the other side, and this caused the front end of the bolt to project. When this occurred or how it occurred was not shown by any testimony, but that it might easily occur from the ordinary working of the car can be readily understood. There is no evidence as to any usage of the car after it left the yard at Sunbury except that which would occur by its removal. It had remained at Pleasant Gap apparently until it was taken out on December 5th, and during that time there was ample opportunity to discover such a manifest defect if it really existed then. Had there been any proof in the case as to its existence during any portion of that time an inference of negligence would have arisen against the defendant which, if not explained by testimony, would have been sufficient to take the case to the jury. But there is no such testimony in the case. There was abundant proof that a very thorough and perfect system of inspection of all cars, coming into defendant's yard at Sunbury, was provided, and it can scarcely be imagined that if this defect had existed while the car was in that yard, it could have escaped discovery. In the absence of any proof that it did exist either before or at the time the car was in the Sunbury yard, we do not see how the jury could be permitted to find that it did then exist, and then draw an inference of negligence because the accident subsequently occurred. It

would be founding one inference upon another inference without any actual testimony to support either. As we under-stand the law it does not permit such a course in actions by employees against their employers. On the contrary in all such actions, in the absence of definite proof of some negligence which directly or naturally results in injury to the employee, the accident is regarded as one of the hazards of the employment of which the servant takes the risk and for which there can be no recovery. In the present case the projection of the end of the bolt was most probably caused by the working off of the nut from the thread at the opposite end of the bolt. This is something which would naturally happen in the ordinary running of the car and it might occur suddenly. It was testified by defendant's witnesses, who were not contradicted, that rough usage and rough handling of the car would cause the displacement of the nut, and also that the projection of the bolt was a manifest defect which would be discovered at a glance from either side of the car. We are unable to hold, in view of the testimony in regard to the system of inspection at the Sunbury yard, that there is any room for an inference that the projection of the rod existed when the car left that yard. As there is no proof that it existed when the car was taken out of Pleasant Gap, the basis of an inference of negligence in not discovering and repairing it while there, is absent, and could exist only by force of specific proof to that effect. But there is no such proof and in order to send the case to the jury they must be permitted first to infer an unproved fact, to wit, that the rod did project while the car was at Pleasant Gap, and then, second, to infer that the defendant was negligent in not discovering and repairing the defect before the car left that station. We do not see how we can make such a ruling, especially in view of the decisions upon the subject.

In Baker v. Allegheny Valley R. R. Co., 95 Pa. 211, we said, SHARSWOOD, C. J.: " A servant assumes all the ordinary risks of his employment. He cannot hold the master responsible for an injury which cannot be traced directly to his negligence. If it has resulted from the negligence of a fellow-servant in the same employment he must look to him and not to the master for redress. The master does not warrant him against such negligence. The duty which the master owes to his servants

is to provide them with safe tools and machinery where that is necessary. When he does this he does not however engage that they will always continue in the same condition. Any defect which may become apparent in their use it is the duty of the servant to observe and report to his employer. The servant has the means of discovering any such defect which the master does not possess. It is not negligence in the master if the tool or machine breaks, whether from an internal original fault, not apparent when the tool or machine was at first provided, or from an external apparent one produced by time and use not brought to the master's knowledge. These are the ordinary risks of the employment which the servant takes upon himself: Ryan v. The Cumberland Valley R. R. Co., 11 Harris, 384.'

In Payne v. Reese, 100 Pa. on page 306, GORDON, J., said: "An employer is not bound to furnish for his workmen the safest machinery, nor to provide the best methods for its operation in order to save himself from responsibility for accidents resulting from its use. If the machinery be of an ordinary character and such as can with reasonable care be used without danger to the employee, it is all that can be required from the employer. This is the limit of his responsibility and the sum total of his duty."

It is to be said in passing that there was not a particle of proof in the present case that there was any defect in the substance or size of the rod, or in its adjustment, that caused the injury. So far as the evidence goes it was of the ordinary material used for such purposes, and was properly made, and placed and held in position in the customary manner in use for such implements. The difficulty was one which resulted from its ordinary use. The defect was not known to the workmen who were employed about the car, nor is there the least evidence to show that it was known to the defendant or to any of its officers. A thorough and adequate system of constant inspection was maintained by the defendant, and there is no proof that the defect was known to any of the persons engaged in that service.

In P. & R. R. Co. v. Hughes, 119 Pa. 301, we held that in an action by a railroad employee against the company for damages for personal injuries while in the performance of his duty,

the mere fact of the injury raises no presumption of negligence on the part of the company as in the case of a passenger, and the burden of proving negligence rests upon the plaintiff. We also said: "It was the duty of the company to exercise ordinary care in adopting, providing and maintaining safe cars with suitable appliances and machinery, with which the plaintiff might transact the business of the company within the line of his duty; not the very best machinery which could be procured, or that which combined the latest device or improvement, as a precaution against danger, but such as was reasonably safe and in common use. . . . It is undoubtedly the duty of railroad companies to exercise ordinary care in the maintenance of the machinery and tools which they put into the hands of their employees, and to institute proper, reasonable regulations for the safety of their employees in this respect; but this rule of duty must be taken in a practicable and reasonable sense. The company does not insure the life of its employees; the servant assumes, as we have said, the ordinary risks of his employment, and if any defect in the tools or machinery placed in his hands becomes apparent in their use, it is the duty of the servant to observe and report to his employer, for the servant has means of discovering defects, which the master may not possess."

In the foregoing case the plaintiff who was a brakeman, while in the performance of his duty and without any fault of his, stepped upon the lever of a brake in the usual way, in order to apply it to the wheels, when the lever gave way and the plaintiff was thrown to the ground. It was contended for the plaintiff that the lever gave way because of the breaking of a supporting pin or from displacement of the key, and it was also alleged that there was negligence arising from an insufficient system of inspection. The case was left to the jury by the court below and they found a verdict for the plaintiff. This court reversed the judgment without a venire on the ground that there was not sufficient evidence of negligence to sustain the verdict. Our lamented Brother CLARK, reviewing the facts, said in the opinion: "Did the pin break at all? If it did was it the result of accident or negligence? If the pin did not break, says the plaintiff, it fell out from the displacement of the key. Is there any evidence that the key had fallen out

or been removed? Was the jury to guess at the real facts of the case, and to determine these questions of fact upon mere conjecture? The plaintiff undertook to trace the injury to the negligence of the company, and until he can show some negligent act which was the proximate cause of his injury he cannot recover. We know that when Hughes stepped on the brake with his whole weight it went down and he with it. But whether the pin broke from any defect which a proper inspection would have disclosed does not appear; nor is there any evidence that the occurrence was owing to a dislocation of the key. It devolved upon the plaintiff to show negligence of the company, and that the negligence was the proximate cause of the injury. In this he has failed, and, in the absence of proof on that point, we cannot ascribe the accident to that cause."

We are satisfied with this reasoning and see no occasion to depart from it. Other cases to the same effect are the following:

In Pittson Coal Co. v. McNulty, 120 Pa. 414, we said: "The action is by an employee against his employer; the gist of the action is negligence, and the burden of proof rests upon the plaintiff to prove that the negligence of the defendant was the proximate cause."

In Mansfield Coal, etc., Co. v. McEnery, 91 Pa. 191, which was an action charging negligence in employing a servant, the present Chief Justice said: "It is not enough for the plaintiff to show that his work was unskillfully done or that he was incompetent. It must appear that the defendants were guilty of negligence in selecting him, that they either knew he was incompetent or with proper diligence might and ought to have known it."

In Erie & Wyoming Valley R. R. Co. v. Smith, 125 Pa. 259, we said: "Had the fireman (who was the person injured) been a passenger he would have had the benefit of a presumption of negligence which it would have been the duty of the company to rebut. But with an employee there is no such presumption and he must prove affirmatively the fact of negligence and that it is such a kind of negligence as violates the special and limited duty of an employer to an employee."

Applying the decision in R. R. v. Hughes, supra, to the

facts of the present case, it appears that a prima facie case was made out as much there as here, because in point of fact the plaintiff was thrown to the ground and injured directly in consequence of some defect in the brake, just as in this case the plaintiff was injured in consequence of a defect in the connecting rod. We did not regard the prima facie case made out by Hughes as sufficient to carry the case to the jury, because, being an employee who assumes the risks of the employment, he must do more than make out a mere prima facie case. He must show the fact of a negligence which imposes liability. A nut may wear off from a bolt by the ordinary usage of travel, or it may be forced off by rough handling in the movement of the train, but for this alone there is no liability to an employee because it is one of the risks of the business. If an opportunity to discover the defect were shown to have existed, and no attempt to repair was made, then a condition of liability would arise which in the absence of exculpatory proof would justify an inference of culpable negligence. The same would be true if a prior actual discovery of the defect had been shown. But the difficulty of the case, as it seems to us, is, that there is no proof of either of these contingencies, and in the absence of such proof the case for the plaintiff can only be adjudged by conjecture. The case of Railroad v. Huber, 128 Pa. 63, was a case of insufficient inspection on the part of the company. The defect was one which was necessarily of gradual development and ought to have been discovered long before the accident if the duty of inspection was properly performed. The plaintiff had no opportunity to discover it, but the defendant had ample opportunity for doing so and was negligent in not making the discovery.

It is earnestly contended by the learned counsel for the plaintiff, that the rule which requires a higher grade of proof from an employee than from a passenger, or a stranger, is too harsh and severe, and while we are not asked to reverse that rule, we are urged to hold that the present case is exceptional in its facts and is not brought within its terms. A most thorough consideration of all the testimony fails to convince us of the correctness of the plaintiff's contention. It seems to us the case does come strictly within the rule, and the reasons of policy and of abstract justice which underlie the rule, are of

such grave consequence, and are so thoroughly ingrained in our system of jurisprudence, that we are not inclined to disturb or question them. Individual cases of hardship no doubt arise in this as in other branches of the law, by the application of general rules, but the judiciary department of the government cannot depart from them, or fail to apply them, under the influence of any such considerations. We are of opinion that the learned court below was correct in directing a verdict to be entered for the defendant. This conclusion renders unnecessary an examination of the other assignments of error.

Judgment affirmed.